IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, 1995



FILED

January 5, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 01C01-9410-CC-00353 |
| Appellee, | ) | |
| | ) | Coffee County |
| v. | ) | |
| | ) | Hon. Gerald L. Ewell, Judge |
| ARNOLD V. PORTER, | ) | |
| | ) | (Felony Reckless Endangerment, 2 counts) |
| Appellant. | ) | |

For the Appellant:

Shawn G. Graham
Assistant Public Defender
605 E. Carroll Street
P.O. Box 260
Tullahoma, TN 37388

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Sharon S. Selby
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN  37243-0493

C. Michael Layne
District Attorney General
        and
Steve Weitzman
Assistant District Attorney General
P.O. Box 147
Manchester, TN 37355

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Arnold V. Porter, appeals from a jury conviction in the Circuit Court of Coffee County for two counts of reckless endangerment with a deadly weapon, a Class E felony. The defendant received two two-year sentences as a Range I, standard offender to be served concurrently in addition to a fine of twenty-five hundred dollars in each count. In this appeal as of right, he presents the following issues:

> I. whether the evidence is sufficient to support guilty verdicts for felony reckless endangerment,
>
> II. whether he was denied a fair trial because the jury did not represent a fair cross-section of the community,
>
> III. whether the trial court imposed an excessive sentence, and
>
> IV. whether the trial court abused its discretion in raising his bond pending appeal.

The facts surrounding this case involve a hundred-mile-per-hour chase on Interstate 24 in Coffee County that covered approximately eighteen miles and culminated in the defendant crashing his automobile into a bridge support. On August 20, 1993 at approximately 10:00 p.m., Trooper Larry Fraley of the Tennessee Highway Patrol (THP) was posted at mile marker one hundred and twenty-nine near Pelham, Tennessee, when the defendant sped past him driving approximately sixty-four miles per hour in a fifty-five-miles-per-hour-zone. Fraley testified that he decided to stop the defendant when the defendant crossed the shoulder line. He stated that he pursued the defendant with his blue lights on and that as the defendant traveled down the shoulder of the interstate, the defendant kept reaching into the passenger floor or seat. He stated that as soon as the defendant pulled over and he had one foot out of the door of his patrol car, the defendant accelerated and took off again, swerving all over the road. Fraley recounted that he pursued the defendant at speeds up to ninety miles per hour when the defendant drove up the Pelham exit ramp, through the grass

2

and broadside through two lanes of traffic. He stated that the defendant then proceeded toward Coffee County, driving one hundred miles per hour.

Fraley stated that he called for assistance and at one point, two semi-trucks blocked both lanes of the interstate in an attempt to aid in the apprehension of the defendant. He reported that the defendant passed the semi-trucks on the shoulder while approaching a bridge but swerved into the lanes just before hitting the guardrail. He stated that the defendant began throwing things out the car window and that a cellophane baggie hit his windshield at one point during the pursuit. However, he admitted that nothing could be found later.

Fraley stated that he and two other troopers, Mike Tanner and Robert Beard, eventually attempted to form a "moving roadblock" to slow down the defendant and arrest him. He explained that Trooper Beard drove in front of the defendant while he and Trooper Tanner drove behind. He also stated that Trooper Tanner's car was equipped with a video camera and that Trooper Tanner videotaped the last three and one-half miles of the chase. He stated that the defendant bumped Beard's car at least three times before veering off the shoulder and striking a bridge abutment at Exit 111. Fraley stated that the defendant struck the bridge support at one hundred miles per hour and then hit a tree. When the defendant's car stopped, the tree was approximately four feet inside the back seat of the car.

Fraley testified that he called for an ambulance before approaching the car to remove the defendant. He reported that the defendant was kicking, screaming and reaching under the passenger front seat. He stated that the defendant kept yelling, "You're gonna have to kill me." Fraley testified that he had his gun drawn because he thought that the defendant may be reaching for a weapon. Another officer sprayed Mace on the defendant, sending him fleeing from the vehicle. Fraley stated

3

that the defendant exited the vehicle "like a wild man" and knocked him down in the process. [1] He stated that they were able to control the defendant in order to place handcuffs on him but that he continued to struggle and eventually had to be "hogtied" with plastic riot straps around his feet.

Trooper Fraley testified that the defendant was transported to the Manchester Medical Hospital for treatment of a broken arm suffered in the accident. He reported that a blood sample was sent to the Tennessee Bureau of Investigation (TBI) Crime Lab for analysis. Jeff Crews, a toxicologist with the TBI Crime Lab, testified that he analyzed the defendant's blood for the presence of drugs and found that the blood contained less than .1 micrograms per milliliter of cocaine.

Trooper Mike Tanner of the THP testified that he received Fraley's call for assistance and waited for the defendant to pass him on the interstate. He stated that he turned on his video camera at mile marker one hundred and sixteen. He saw the defendant approaching at a high rate of speed and began following him. He stated that he turned on his emergency flashers in an attempt to warn other motorists. He recounted that the defendant never drove below ninety miles per hour during the chase. He stated that the defendant hit the bridge support at approximately ninety-three miles per hour without applying his brakes. He testified that the defendant kept running his hand under the passenger seat. He said that Fraley was on the driver's side and that close to a minute went by before another officer sprayed the defendant with Mace, causing him to exit the car. Tanner testified that he recorded the last four to four and one-half miles of the chase and that the videotape was shown to the defendant on the night of his arrest.

---

[1] The defendant was also indicted for assault relative to knocking down Trooper Fraley. However, the jury acquitted him of the charge.

The videotape of the chase was shown to the jury. It showed the defendant and the three troopers traveling at a high rate of speed past numerous vehicles on the interstate. It also showed that Troopers Fraley and Tanner followed the defendant at a distance of approximately two car lengths while the defendant traveled very close to Trooper Beard. The video contained footage of the defendant crashing and of his erratic and violent behavior upon arrest.

Robert Beard of the THP testified that he and the other troopers attempted to form a moving roadblock to apprehend the defendant. He stated that on at least three occasions, the defendant's grill and bumper were not visible in his rearview mirror, although he did not believe that the defendant had actually bumped him at any time. He recounted that there were still several vehicles on the roadway during the chase and that the defendant switched lanes several times. He gave a similar account of the defendant's behavior and stated that the defendant bit Officer Larry Campbell of the Coffee County Drug Task Force while being restrained.

Deputy William Marcom of the Coffee County Sheriff's Department testified that he followed the chase behind Trooper Tanner's car and that no one ever hit the defendant's car. He stated that, when the officers tried to apprehend the defendant, the defendant kept reaching under his seat and would not exit the car. He recounted that he sprayed the defendant with Mace in order to facilitate his arrest. He testified that he assisted in the search of the defendant's vehicle and that the search uncovered no weapons or drugs.

The defendant testified that he was traveling from Atlanta to Nashville when he met a girl at a gas station and followed her to a party. He stated that he asked for a nonalcoholic drink and consumed two sixteen ounce beverages before smelling marijuana and leaving the party. He could not remember the location of the

gas station or the party. He stated that he started to feel "kinda racy" when he returned to Interstate 24. He testified that he initially stopped for Trooper Fraley but sped away when something frightened him. He admitted that he passed the semi-trucks. He described the moving roadblock and stated that, although he was driving behind Trooper Beard, Beard was slowing down in order to hit him. He stated that the troopers were so close that he went off the road to avoid an accident and was unconscious until he awoke to find Trooper Fraley standing over him with a gun. He also claimed that the troopers broke his arm while apprehending him.

On cross-examination the defendant was questioned about his direct examination testimony relative to his career as a research chemist and agreed that the average research chemist could make twenty thousand dollars a year but explained that he did not have to work that much. The state questioned him about his affidavit of indigency to qualify for appointed counsel on which he reported his annual income as three thousand dollars, although he testified to an income of five thousand dollars on direct examination. When questioned regarding why he told his treating physician that he had not suffered any loss of consciousness, he denied making the statement. He also denied telling the physician that he regularly used crack and cocaine in conjunction with Prozac to enhance the high. When confronted with the videotape, the defendant implied that it was not him on the videotape because, as he stated, "I can't see my face."

I

The defendant contends that the evidence is insufficient to convict him of felony reckless endangerment. He claims that his conduct did not rise to the level of recklessness required for a conviction for reckless endangerment and that his involuntary intoxication was a defense to the conduct. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the

6

evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

A conviction for felony reckless endangerment requires that a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury" by the use of a deadly weapon. T.C.A. § 39-13-103. A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk . . . . The risk must be of such a nature and degree that its disregard constitutes a gross deviation from a standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." T.C.A. § 39-11-106(31). A deadly weapon is defined as "[a]nything that in a manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(5)(B).

The evidence in this case is sufficient to support the two convictions for felony reckless endangerment. The defendant was convicted of endangering Troopers Fraley, Beard and others. He engaged Trooper Fraley in an eighteen-mile chase with speeds exceeding ninety miles per hour. He failed to slow down or to yield to the troopers' sirens or blue lights. Two instances in particular stand out as especially reckless acts. First, when two semi-trucks attempted to aid in his apprehension, the defendant passed them on the shoulder while approaching a bridge, endangering the safety of the truck drivers, himself and Trooper Fraley. Later, the defendant drove closely behind Trooper Beard at speeds up to one hundred miles per hour for approximately four miles before crashing into the bridge support. Furthermore, as is apparent from the videotape, the interstate was heavily traveled even at 10:00 p.m. and the defendant and troopers passed several vehicles during the chase. The defendant acted recklessly and endangered the lives and safety of the troopers, as

7

well as anyone else on the road. We also conclude that the defendant's automobile was used in a manner consistent with a deadly weapon.

Relative to his defense of involuntary intoxication, the defendant testified that he met a woman at a gas station, followed her to a party and ingested what he claims was a nonalcoholic beverage that someone must have "spiked" with a drug. He could not specify where he met this woman or where the party took place. When confronted regarding his statements to the treating physician that he regularly used cocaine or crack in conjunction with Prozac, he denied making the statement. The jury is the exclusive judge of the credibility of witnesses and it was their prerogative to disbelieve the defendant's testimony. We will not reweigh the credibility of the witnesses on appeal and we conclude that the evidence is sufficient to support a conviction for felony reckless endangerment.

## II

The defendant, an African-American, contends that he was denied a fair trial because the jury did not represent a fair cross-section of the community. The state responds that the issue is waived for the defendant's failure to object contemporaneously to the jury selection process. The record reflects that the defendant raised this issue for the first time in his motion for a new trial. We agree with the state and conclude that "[b]y failing to raise this issue prior to a plea on the merits, this issue has been waived." State v. Shaw, 619 S.W.2d 546, 548 (Tenn. Crim. App.) app. denied (Tenn. 1981).

## III

The defendant argues that the trial court imposed an excessive sentence and failed to weigh properly the applicable enhancing and mitigating factors. The state

8

responds that the trial court properly applied all the enhancement factors in arriving at the maximum sentence of two years.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court follows the statutory sentencing procedure, makes findings of fact that are adequately supported by the record and gives due consideration and proper application of the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based

9

upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169. For the purpose of review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles to arrive at the sentence. See T.C.A. §§ 40-35-210(f) and -209(c).

The defendant was sentenced to the maximum two-year sentence. Enhancement factors are to be applied to the facts of the offense if not themselves essential elements of the offense. T.C.A. § 40-35-114; State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994). The trial court applied the following enhancement factors as listed in T.C.A. § 40-35-114:

> (3) The offense involved more than one victim;
>
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high; and
>
> (16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Factor (3) was properly applied in this case given the numerous vehicles that were traveling on the interstate during the chase. The defendant not only endangered the lives of the troopers but also endangered the lives of many other motorists. Factors (10) and (16) should not have been applied because felony reckless endangerment requires the use of a deadly weapon and our court has held that there is necessarily a high risk to human life and the great potential for bodily injury whenever a deadly weapon is used. See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App.), app. denied (Tenn. 1994); State v. Hicks, 868 S.W.2d 729. 732 (Tenn. Crim. App. 1993).

The trial court rejected three of the defendant's requested mitigating factors: that the defendant's conduct neither caused nor threatened serious bodily injury, that substantial grounds exist to excuse the defendant's conduct and that the defendant was under the influence of involuntary intoxication. T.C.A. § 40-35-113(1),(3) and (8). However, the trial court did consider as mitigation the defendant's social history and background, despite the fact that it was unsubstantiated by any witnesses, documentation or verification by the presentence officer.[2] We agree that the evidence does not support the application of mitigating factors (1), (3) and (8) and conclude that the trial court was more than generous to consider the defendant's unsubstantiated background as mitigation under these circumstances. Although the trial court erroneously applied two enhancement factors, we conclude that two years is an appropriate sentence in light of the defendant's total disregard for the safety of numerous motorists as evidenced by the eighteen mile, one-hundred-miles-per-hour chase in which he engaged to police.

## IV

In the defendant's final issue, he argues that the trial court abused its discretion when it increased his bond from three thousand dollars to ten thousand dollars pending appeal. At the conclusion of the trial proceedings but before the sentencing hearing, the trial court increased the defendant's bond, stating that "considering the verdict of the jury here, I think it is appropriate that the bond be increased." The defendant did not object to the bond increase at that time but did file a motion for reduction of bond before sentencing. The motion requested that the defendant be released on his own recognizance or that the original bond of three thousand dollars be reinstated due to the fact that the defendant had already served

---

[2] The defendant claimed to have extensive training and education in biology and chemistry. However, he refused to sign a release of records and the presentence officer was unable to verify any of his educational, employment or social background.

11

nine months in jail by the date of the sentencing hearing. At the conclusion of the sentencing hearing, the trial court denied the defendant's motion but failed to enter a written order stating his reasons for denial. See T.C.A. § 40-30-143.

T.C.A. § 40-30-113(3) addresses a defendant's admission to bail pending appeal and grants broad discretion in the trial court regarding whether to reduce or increase bond pending appeal. However, it is apparent from the record that this issue is moot because the record reflects that the defendant's sentence has long since been served.[3] Therefore, we need not address whether the trial court abused its discretion in increasing the defendant's bond pending appeal.

Based upon the foregoing and the record as a whole, the convictions and sentences for two counts of felony reckless endangerment are affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Jerry Scott, Presiding Judge

_____
David G. Hayes, Judge

---

[3]The appropriate way to have an appeal bond decision reviewed pending appeal is by Rule 8, T.R.A.P., which avoids the potential of serving a sentence before the issue is reviewed. In fact, the record reflects that the defendant's sentence was essentially served by the time this case was docketed and assigned.