STATE of Tennessee, Appellee,

v.

Timmy Lee HILL, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 8, 1994.

Permission to Appeal Denied by Supreme Court Sept. 12, 1994.

Charles W. Burson, Atty. Gen. & Reporter, Christina S. Shevalier, Asst. Atty. Gen., Nashville, W. Michael McCown, Dist. Atty. Gen., Fayetteville, Gary M. Jones, and Robert G. Crigler, Asst. Dist. Attys. Gen., Shelbyville, for appellee.

Michael D. Randles, Shelbyville, for appellant.

## OPINION

JONES, Judge

The appellant, Timmy Lee Hill, was convicted of aggravated assault, a Class C felony, by a jury of his peers. The trial court found that the appellant was a multiple offender and imposed a Range II sentence of ten (10) years confinement in the Department of Correction.

Four issues are presented for review. The appellant contends that the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty beyond a reasonable doubt. He also contends that the trial court committed error of prejudicial dimensions by (a) allowing the victim to remove his shirt so that the jurors could see the scars that the victim received at the hands of the appellant, (b) requiring him to fairly raise the issue of self-defense before permitting him to cross-examine the victim about prior convictions and prior bad acts, and (c) imposing the maximum sentence allowed by law.

The judgment of the trial court is affirmed as modified.

During the afternoon of December 12, 1991, Larissa Hayward and Tiffany Bass went to the home of Donna Harden. Hayward confronted Delwin O'Neal and accused him of taking Troy Sales' hat. She told O'Neal that "if the hat don't come up. . . . we are going to get Scooby [Sales] and Troy [Sales] and then to see if we can get it back. If we do, there is going to be some trouble." Hill, who was visiting Harden with his girlfriend, overheard the conversation.

The victim, Eric Johnson, went to the Sparrows, a night club, on the evening in question. Later, Troy Sales arrived at the club. Hayward and Bass also came to the club. It appears that Hayward told Troy Sales that O'Neal took his hat. The victim was unaware of this conversation.

Hill, O'Neal, Harden, and Gladys Allen, Hill's girlfriend, walked to the 20 Grand Club. It is located a short distance from the Sparrows. Harden and Allen later went to the Sparrows. They had a conversation with Hayward and Bass. Hayward subsequently told Sales that O'Neal was at the 20 Grand Club. This information was related to Johnson.

Sales asked Johnson "to walk up the street with him" as he wanted to get his hat back. Sales and Johnson walked from the Sparrows toward the 20 Grand Club. When they reached the intersection of Morton and Quarry, O'Neal and Hill were sitting on the curb. Sales and O'Neal engaged in a heated dialogue about Sales' hat. Johnson did not engage in the dialogue with O'Neal; nor did he engage in a dialogue with Hill—he simply stood there and listened. A crowd assembled and began urging the parties to fight. Hill approached Johnson, removed a straight razor from his pocket, and cut him in four separate places. When Johnson realized that he was bleeding, he ran towards a drainage ditch. Someone advised him to "watch out". When Johnson turned he saw O'Neal over him with a butcher knife. Johnson ran along the drainage ditch. O'Neal pursued him. Eventually, Johnson reached Bass's motor vehicle and drove himself to the hospital.

Hill contends that he acted in self-defense. According to his theory, a large group of individuals, members of a gang, approached them. Johnson attacked him with a knife. They wrestled. He took the knife away from Johnson; and he cut Johnson with that knife. He denied being armed with a straight razor.

## I.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.

In determining the sufficiency of the evidence, this Court does not reweigh nor reevaluate the evidence. *State v. Matthews,*

805 S.W.2d 776, 779 (Tenn.Crim.App.1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

■ Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Id.* In *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *Id.*

■ The appellant has failed to illustrate why the evidence contained in the record is insufficient to support the verdict returned by the jury. Moreover, the facts contained in the record are sufficient to support a finding by a rational trier of fact that the appellant was guilty of aggravated assault beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The jury did not believe the testimony presented by the appellant that he cut the victim in self-defense. This was the prerogative of the jury as the trier of fact.

This issue is without merit.

## II.

The indictment returned by the Bedford County Grand Jury alleged that Hill "unlawfully, feloniously, intentionally, knowingly or recklessly did cause bodily injury to Eric Johnson by the use of a deadly weapon, to wit: knife...." Thus, the state was required to prove beyond a reasonable doubt that Hill (a) assaulted Johnson within the meaning of Tenn.Code Ann. § 39–13–101 and (b) he either caused serious bodily injury to Johnson or displayed a deadly weapon during the assault. Tenn.Code Ann. § 39–13–102(a)(1). It was stipulated that Johnson sustained "bodily injury" when Hill admittedly cut him. As previously stated, Hill admitted that he cut Johnson with a knife. Johnson testified that he was cut with a straight razor. Both the knife and straight razor are deadly weapons. The only issue presented by the facts was whether Hill's conduct constituted an aggravated assault or an act of self-defense.

During Johnson's direct examination, the state asked that he remove his shirt and exhibit the residual scars. It appears that there were four large scars. Defense counsel objected to Johnson exhibiting these scars. He predicated his objection on the stipulation that Johnson had sustained bodily injury. In other words, the extent of the scarring was irrelevant given the stipulation.

The appellant argues that the purpose of a stipulation is to save time and expense. In addition, permitting the jury to view the scars was prejudicial because the cutting in question only occurred three and one-half months before the trial commenced and the scars were still pinkish in color. Thus, the appellant argues, the prejudicial effect clearly outweighed the probative value of this evidence. *See* Tenn.R.Evid. 403.

■ The appellant relies upon facts which are not contained in the record. First, the record does not reflect how the scars appeared when the jury viewed them. *See State v. Lane,* 689 S.W.2d 202, 205 (Tenn.

Crim.App.1984). Second, when the number of stitches were alluded to during the sentencing hearing, the trial court noted that this fact was not in evidence. Moreover, this fact was not introduced into evidence during the sentencing hearing. The statement of a lawyer during a hearing does not constitute evidence. *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn.Crim.App.1988); *State v. Dobbins,* 754 S.W.2d 637, 640 (Tenn.Crim.App.1988); *State v. Burton,* 751 S.W.2d 440, 450 (Tenn. Crim.App.1988); *Davis v. State,* 673 S.W.2d 171, 172 (Tenn.Crim.App.1984); *Trotter v. State,* 508 S.W.2d 808, 809 (Tenn.Crim.App. 1974).

 The question of whether evidence is admissible rests within the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion unless clear abuse appears on the face of the record. *State v. Furlough,* 797 S.W.2d 631, 645 (Tenn.Crim.App.1990), *per. app. den.* July 23, 1990. In this case, the trial court did not abuse its discretion in permitting the jury to view the scars for the purpose of determining "the location of the wounds." Although the location, length, or nature of the scars does not appear in the record, viewing the scars may have been relevant to the jury in determining the truth of what occurred on the night in question. The location of the wounds may have been relevant to establish whether Johnson's version or Hill's version of the facts was accurate. Also, the nature and extent of the wounds may have been relevant on the issue of self-defense—did Hill use excessive force in defending

himself. The probative value of this evidence far outweighed any prejudicial effect.

The issue is without merit.

### III.

 The victim, Eric Johnson, had an extensive history of prior convictions and prior bad acts. Johnson had been convicted of burglary and two counts of assault. According to the appellant, Johnson "had been charged, but not convicted of numerous assaultive-type offenses." These prior bad acts occurred in 1989 and 1990. The appellant wanted to introduce the convictions and prior bad acts to corroborate his theory that Johnson was the initial aggressor. The appellant was not aware of Johnson's criminal convictions or the prior bad acts he had committed.[1]

 The assistant district attorney general moved the trial court for a ruling on the admissibility of Johnson's convictions and prior bad acts before he was called to testify. The trial court ruled that the convictions for assault and the prior bad acts involving violence were admissible in evidence if the appellant was personally aware of the conduct or "the issue of first attacker" was fairly raised during the course of the trial. The trial court predicated its ruling on this Court's opinion in *State v. Furlough,* 797 S.W.2d 631, 649 (Tenn.Crim.App.1990), *per app. den.* July 23, 1990. He also ruled that the appellant could use the burglary conviction to impeach Johnson.

Neither the victim nor the state's witnesses would admit that Johnson attacked the appellant first. Consequently, this issue

---

1. A distinction must be made between evidence of the victim's violent acts that are introduced to (a) corroborate the accused's theory that the victim was the initial aggressor and (b) establish the accused's apprehension or fear of being seriously injured by the victim immediately before and during the affray.

When an accused seeks to establish his apprehension or fear of being seriously injured by the victim based upon the victim's prior convictions and bad acts involving violence, the accused, and the accused alone, may testify concerning his or her knowledge of the victim's recent violent conduct. However, if the state introduces evidence to establish that the accused was not aware of this information prior to the affray, the accused

may then introduce the testimony of a third party to establish what that party told the accused regarding the victim's violent acts. *See Williams v. State,* 565 S.W.2d 503 (Tenn.1978); *State v. Furlough,* 797 S.W.2d 631, 648–49 (Tenn.Crim. App.1990), *per. app. den.* July 23, 1990. In each instance the evidence must be limited to what the accused actually perceived through his or her senses or what a third person actually told the accused. *Williams,* 565 S.W.2d at 505–06.

Since the appellant had never perceived or been told about the victim's prior acts of violence, the evidence he sought to introduce was limited in scope to corroborating his theory of defense that the victim, not the appellant, was the initial aggressor.

was not "fairly raised" by the evidence until the appellant presented his defense. The trial court permitted the appellant to recall Johnson to the witness stand and ask him about his prior convictions for assault as well as the prior bad acts involving violence.

The appellant argues in this Court that the trial court committed error of prejudicial dimensions in refusing to permit defense counsel to cross-examine Johnson regarding the assault convictions and prior bad acts when he testified during the state's case in chief. The record does not reflect counsel making such an insistence when the trial court ruled on the admissibility of this evidence.

### A.

The admissibility of evidence to establish a victim's "pertinent character trait" is governed by Rule 404(a)(2), Tenn.R.Evid. This rule provides:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion, except:
>
> \* \* \* \* \* \*
>
> **(2) Character of Victim.** Evidence of a pertinent character trait of the victim of crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

The Advisory Commission Comment to this rule states that "[p]art (a) [of Rule 404] has always been the law in Tennessee for criminal prosecutions."

In *State v. Furlough*,[2] *supra,* a prosecution for murder in the first degree, the accused attempted to offer evidence of the victim's prior bad acts for the purpose of establishing that the victim was the aggressor in the

conflict which resulted in his death. The trial court ruled that the evidence could not be admitted. This Court held that the prior bad acts, which were unknown to the accused at the time of the conflict, should have been admitted as evidence. Judge Gary R. Wade, speaking for a unanimous court, stated: "In our view the better reasoned cases hold that specific violent acts of the victim are admissible to corroborate the defendant's assertion that the victim was the aggressor." 797 S.W.2d at 649.

Although *Furlough* was tried before the effective date of the Tennessee Rules of Evidence, Rule 405(b) permits the use of specific instances of conduct to establish a character trait of the victim.

In summary, the trial court correctly ruled that Johnson's convictions for assault and the prior bad acts involving violence were admissible to corroborate the appellant's theory that Johnson was the initial aggressor in the affray. The fact that the appellant was unaware of Johnson's prior convictions and bad acts prior to their encounter on the night in question did not affect the admissibility of this evidence to establish that the victim was the initial aggressor.

### B.

When evidence of a victim's character trait is permitted by Rule 404, Tenn.R.Evid., to establish that the victim was the initial aggressor, the method of proving the victim's character trait is governed by Rule 405, Tenn.R.Evid.[3] As a general rule, there are three types of evidence that can be presented to establish a person's character: reputation, opinion, and specific instances of conduct. *See* N. Cohen, D. Paine & S. Sheppard, *Tennessee Law of Evidence* § 405.1, at 145 (2nd ed. 1990).

The nature of the character evidence dictates when the evidence can be introduced. In *State v. Perry Ricky Ray*, 880 S.W.2d 700 (Tenn.Crim.App., 1993), *per. app. den.* Sep-

---

**2.** *See* N. Cohen, D. Paine & S. Sheppard, *Tennessee Law of Evidence* § 404.4, at 23 (2nd ed. Supp.1991). The authors are critical of this Court's holding in *Furlough.* However, the doctrine of *stare decisis* requires that this panel of the Court follow the holding in *Furlough.*

**3.** In N. Cohen, D. Paine & S. Sheppard, *Tennessee Law of Evidence* (2nd ed. 1990), the authors state: "Rule 405 complements Rule 404 by indicating, in most situations, the methods of proving a person's character when such proof is authorized by Rule 404." *Id.* § 404.1 at 124–25.

tember 7, 1993, this Court held that when specific instances of conduct are admissible to corroborate the accused's theory that the victim was the initial aggressor in the affray, the evidence of the prior convictions and bad acts are only admissible as part of the accused's cross-examination of the victim. *See* N. Cohen, D. Paine & S. Sheppard, *supra,* § 404.4, at 23 (2d ed. Supp.1991). In *Ray,* Judge Paul G. Summers, speaking for a unanimous court, stated:

> While such evidence is generally admissible under Rule 404(a)(2), Rule 405(a) governs the methods of proving character in this situation, and requires that proof be in the form of opinion or reputation evidence. Rule 405(a) limits proof of specific instances of conduct to cross-examination.

Id. at 705.

 The trial court's ruling that the appellant could not ask the victim about his prior convictions for assault or recent prior bad acts involving violent conduct unless the victim admitted he was the initial aggressor was erroneous. However, this error was harmless. Tenn.R.App.P. 36(b). As previously noted, the trial court subsequently ruled that the victim could be recalled to the witness stand and defense counsel could ask him about the convictions for assault as well as the bad acts of violence. Defense counsel did recall Johnson and asked him about the convictions for assault and prior bad acts involving violence. Consequently, this Court cannot find, as required by Rule 36(b), that this error "more probably than not affected the judgment or would result in prejudice to the judicial process."

### IV.

The appellant argues that the sentence imposed by the trial court is excessive. He contends that the trial court committed error of prejudicial dimension in finding that certain enhancement factors existed and finding that no mitigating factors were present on the face of the record.

As the appellant asserts, the trial court specifically found that there were no mitigating factors. Based upon a thorough review of the record, this Court agrees with the trial court that there are no mitigating factors present in this case.

The trial court found four enhancement factors. First, the appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn.Code Ann. § 40–35–114(1). The appellant has an extensive record. As a juvenile he was convicted of burglary, two counts, and larceny, two counts. As an adult, he was convicted of theft under $500, forgery, resisting arrest, possession of stolen property over $100, assault and battery, two counts, robbery, recklessness (Indiana conviction), attempted conversion (Indiana conviction), two counts, and destruction of private property. The appellant agrees that this is a proper enhancement factor. Second, the appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Tenn.Code Ann. § 40–35–114(8). The appellant agrees that this is a proper enhancement factor. Third, the appellant had no hesitation about committing a crime when the risk to human life was high. Tenn.Code Ann. § 40–35–114(10). Fourth, the crime was committed under circumstances where the potential for bodily injury to a victim was great. Tenn.Code Ann. § 40–35–114(16).

 The trial court should not have considered factor ten, i.e., the appellant had no hesitation about committing a crime when the risk to human life was high. This factor is inherent in the offense of aggravated assault. *State v. Tony Von Carruthers,* Shelby County No. 02–C–01–9102–CR–00019, 1991 WL 147946 (Tenn.Crim.App., Jackson, August 7, 1991). As this Court said in *State v. Kevin L. Gaskell,* Bradley County No. 285, 1991 WL 112275 (Tenn.Crim.App., Knoxville, June 26, 1991): "It is difficult to discern a situation in which an offense committed with a deadly weapon would not necessarily entail a risk to human life." Slip op. at 11. In addition, Hill's wrath and vindictiveness was directed solely at Johnson. The record is void of any evidence that individuals in close proximity were in danger of being injured.

 The trial court should not have considered factor sixteen, i.e., based upon the

circumstances of the crime committed by the appellant the potential for bodily injury to the victim was great. This factor is also inherent in the offense of aggravated assault. *See State v. Tony Von Carruthers, supra.* In addition, the inflicting of bodily injury was an element of aggravated assault in this case. Consequently, it cannot be used to enhance the sentence. Tenn.Code Ann. § 40–35–114.

After a *de novo* review of the record as mandated by Tenn.Code Ann. § 40–35–401(d), this Court is of the opinion and finds that the sentence imposed by the trial court should be reduced from ten (10) years to eight (8) years. Furthermore, based upon the circumstances of the offense, the appellant's extensive criminal record, the need for deterrence in the community, and the appellant's unwillingness to rehabilitate himself while he was previously on probation, the appellant is not a candidate for probation or sentencing pursuant to the Community Corrections Act of 1985.

SCOTT, P.J., and TIPTON, J., concur.