# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## SEPTEMBER 1995 SESSION



FILED

September 19, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| Appellee, | ) | NO. 03C01-9501-CR-00018 |
| | ) | |
| | ) | COCKE COUNTY |
| V. | ) | NO. 5803 |
| | ) | |
| | ) | HON. BEN W. HOOPER, II, JUDGE |
| JAMES GRADY BALL, | ) | |
| | ) | attempt to commit first degree murder |
| | ) | (one count), aggravated assault (one |
| | ) | count), resisting arrest (one count) |
| Appellant. | ) | |

FOR THE APPELLANT:

Edward C. Miller
Public Defender
Fourth Judicial District
P. O. Box 416
Dandridge, Tennessee 37725

John Bunnell
Assistant Public Defender
102 Mims Avenue
Newport, Tennessee 37821

FOR THE APPELLEE:

Charles W. Burson
Attorney General and Reporter

Christina S. Shevalier
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243

Alfred C. Schmutzer, Jr.
District Attorney General
125 Court Avenue, Room 301-E
Sevierville, Tennessee 37862

Richard Vance
Assistant District Attorney General
339-A East Main Street
Newport, Tennessee 37821

OPINION FILED: _____

Affirmed in part and dismissed in part

LEE RUSSELL, SPECIAL JUDGE

**OPINION**

The Appellant appeals from convictions for attempt to commit first degree murder, aggravated assault, and resisting arrest, and the Appellant appeals the sentences that he received for each of these three offenses. We reverse the conviction for attempt to commit murder on the grounds that the crime of attempting to commit murder as proscribed by Tennessee Code Annotated § 39-13-202(a)(3) does not exist in Tennessee. The convictions for aggravated assault and resisting arrest are affirmed, and the sentences imposed by the trial judge for aggravated assault and resisting arrest are affirmed.

The Appellant was indicted on July 19, 1993, by the Cocke County Grand Jury for attempted first degree murder in violation of Tennessee Code Annotated § 39-13-202(a)(3), for aggravated assault, and for resisting arrest. Prior to a jury trial, the Appellant moved to dismiss Count I of the indictment charging attempted first degree murder, but the motion was overruled by the trial judge. A jury trial was conducted on January 28, 1994, and the Appellant was convicted on all three counts. A sentencing hearing was held on the same day, and the Appellant was sentenced to twenty-five years on attempted first degree murder, fifteen years on aggravated assault, and eleven months and twenty-nine days on resisting arrest, all to be served concurrently. A motion for a new trial was filed on February 3, 1994, and was overruled on September 16, 1994.

The Appellant raises six issues on appeal. He contends that the trial court erred in not dismissing the indictment for attempt to commit first degree murder on the grounds that the indictment fails to state a cause of action. More specifically, the Appellant alleges that Tennessee does not recognize as a crime an attempt to commit reckless killing in violation of Tennessee Code Annotated § 39-13-202(a)(3). Second, the Appellant alleges that the trial court erred in allowing the victim to exhibit physically to the jury burns he received in the attack by the Appellant. Third, the Appellant alleges that the evidence in the record is insufficient to support the convictions for attempt to commit first degree murder and aggravated assault. Fourth, the Appellant alleges that he was

2

subjected to double jeopardy by being tried for both attempted murder and aggravated assault for one attack on the victim. Fifth, the Appellant argues that the trial judge erred in not requiring the State to produce in discovery certain notes taken by the State's arson investigator. Sixth, the Appellant asserts that the trial judge improperly considered certain enhancement factors and should not have given the Appellant the maximum sentences for the crimes of which he was convicted.

The State presented proof that the victim of this crime went to the home of the Appellant because the victim had been told that the Appellant believed that the victim had stolen money from the Appellant. The purpose of the visit was for the victim to deny the allegation. The victim then attempted to leave the Appellant's home in the victim's car. The Appellant entered the car on the passenger side, and the victim drove up the road. The Appellant continued to demand the return of his stolen money. When the victim persisted in his denial that he had stolen any money from the Appellant, the Appellant threw a container of paint thinner on the victim and intentionally set it on fire. The victim habitually inhaled paint thinner for its psychoactive qualities, and the victim had a container of the paint thinner in his car for that purpose.

The victim was the only witness at trial to describe the meeting between the Appellant and the victim and the only witness to describe the burning incident itself. However, the State produced a witness who testified that on the day before the incident, the Appellant asked the witness if he had ever seen anyone burned up. The witness said that the Appellant was flipping a cigarette lighter when he, the Appellant, said this. Evidence was produced by the State that the victim's vehicle was found approximately 350 to 400 yards from the Appellant's residence, that the victim was picked up at that site in a severely burned condition and was driven to the hospital, and that the victim's car was burned from the inside out in a fire in which an accelerant had been used.

The State's arson expert testified that the car burned from the inside out, that the right-hand side of the car was less heavily burned than the left side, and that the passenger door was probably opened immediately after the fire began and remained

3

open. The State's expert testified that it was an accelerated fire, that there were no accelerated burn patterns on the passenger side of the automobile, that something was thrown between the seats and across the driver's seat. The expert testified that there was no evidence that the fire started in the ashtray or that the carpet had been soaked with an accelerant, that the burn patterns in the car were consistent with paint thinner being poured or splashed out of a sixteen-ounce plastic bottle, and that the expert's findings were consistent with the victim's version of the facts. The Appellant's arson expert testified that it could not be determined with certainty whether the car was intentionally set on fire, testified that the fire involved the use of an accelerant, and testified that flammable liquid was present in the car, but he testified that there were no discernible burn patterns and that paint thinner stored in the car could ignite under normal operation. However, the Appellant's expert conceded that there was no evidence that a spark or the turn signal ignited the paint thinner in this particular incident.

At the time of this incident, and prior to its amendment in 1995, Tennessee Code Annotated § 39-13-202(a) read in part as follows:

> **First degree murder.** -- (a) First degree murder is:
>
> . . . (2)   A reckless killing of another committed in the perpetration of, or attempt to perpetrate, any first degree murder, arson, rape, robbery, burglary, theft, kidnapping or aircraft piracy;
>
> (3)   A reckless killing of another committed as the result of the unlawful throwing, placing or discharging of a destructive device or bomb . . . .

The crime of criminal attempt was and is defined in Tennessee Code Annotated § 39-12-101 as follows:

> **Criminal attempt.**  -- (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1)   Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2)   Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3)   Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the

4

conduct as the person believes them to be, and the conduct constituted a substantial step toward the commission of the offense . . . .

Tennessee Code Annotated § 39-11-106(a)(31) states as follows with regard to the meaning of the word "reckless" as used in Tennessee Code Annotated § 39-11-101, et seq.:

> 'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all of the circumstances as viewed from the accused person's standpoint. . . .

The Appellant relies on the case of *State v. Kimbrough*, 924 S.W.2d 888 (Tenn. 1996), which held that Tennessee does not recognize the crime of an attempt to commit first degree murder as defined in Tennessee Code Annotated § 39-13-202(a)(2) prior to the statute's amendment in 1995. Our Supreme Court in *Kimbrough* pointed out that all three alternative versions of criminal attempt as set out in Tennessee Code Annotated § 39-12-101(a)(1)-(3) involve a specific intent. *Id.* at 889. The Court observed that traditionally in Tennessee the intent required for an attempt is an intent to commit the contemplated crime, citing *Gervin v. State*, 371 S.W.2d 449, 451 (Tenn. 1963). *Kimbrough* at 890. The Supreme Court recites that under Tennessee Code Annotated § 39-11-106(a)(18), a person acts "intentionally" with respect to the nature of the conduct or its consequences when the person has a conscious objective or desire to engage in the conduct or to cause the result. *Kimbrough* at 890. The Court recites the statutory definition of "recklessness" given above and points out that felony-murder, as defined in Tennessee Code Annotated § 39-12-101(a)(2), is by definition an unintentional killing. *Kimbrough* at 890. The Court concludes, "Obviously, a charge of 'attempted felony-murder' is inherently inconsistent, in that it requires that the actor have intended to commit what is deemed an unintentional act." *Id.*

The Supreme Court held that although murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill. *Id.* at 891. This

assertion was made with regard to attempts to commit murder in general and was not limited to attempts to commit felony-murder. *Id.* Finally, the Supreme Court concludes as follows:

> Of course, it goes without saying that if an accused actually possesses the requisite intent to kill, he or she may be charged with attempted murder. We simply believe that it is logically and legally impossible to attempt to perpetrate an unintentional killing.

*Id.* at 892. These statements by the Court were also made with general reference to attempts to kill unintentionally and not merely to attempts to commit felony-murder.

The logic of *Kimbrough* applies inescapably to an attempt to commit first degree murder as defined in Tennessee Code Annotated § 39-13-202(a)(3). Murder defined in § 39-13-202(a)(3) uses the same adjective, "reckless," that is used in the definition of felony-murder in § 39-13-202(a)(2). "Reckless" is defined for both statutes in the same way, as set out in Tennessee Code Annotated § 39-11-106(a)(31). The same criminal attempt statute applied in *Kimbrough* defines criminal attempt in the case *sub judice.* If it is a logical and legal impossibility to attempt to kill unintentionally in the stealing of an airplane, as proscribed by § 39-13-202(a)(2), then it is a logical and legal impossibility to attempt to kill unintentionally by throwing a destructive device at someone, as proscribed by § 39-13-202(a)(3). In both instances, the logical impossibility is intentionally attempting to do something which by definition is unintentional.

The State argues that the record reveals that the Appellant did in fact intend to kill the victim. This court is inclined to agree that had the Appellant been indicted for attempt to commit murder as defined in Tennessee Code Annotated § 39-13-202(a)(1), which is intentional, premeditated, and deliberate killing, and had a jury convicted the Appellant on the record in this case, then the record would have supported such a conviction. However, the indictment in the case *sub judice* was for an attempt to kill recklessly, not an attempt to kill intentionally, and this court cannot sustain a conviction on the grounds that the record would have sustained a conviction for something else. The State's decision to indict under Tennessee Code Annotated § 39-13-202(a)(3), instead of under Tennessee Code Annotated § 39-13-202(a)(1), was made before the *Kimbrough* case

6

decided in the Court of Criminal Appeals in 1994. Therefore the State was not aware at the time of indictment that an attempt to commit an unintentional killing was not cognizable in Tennessee. The conviction for attempted first degree murder will be reversed, and Count I of the indictment is dismissed.

The Appellant's second issue is whether the trial court erred in allowing the State to have the victim physically display to the jury the burns that he suffered. The Appellant objected at trial to introduction of the evidence, and the trial judge heard argument outside the jury's hearing. The State argued that the degree of injury was relevant on the charge of attempted murder, and the State argued in the hearing that the viewing of the victim's body would reveal greater injury to the front and on the right side compared to the injury on the left side. This pattern of injury would corroborate the victim's version of the facts of the crime. The appearance of the scars from the burns was also relevant to prove that the victim received "serious bodily injury" as required for conviction for aggravated assault under Tennessee Code Annotated § 39-13-102(a)(1)(A). The Appellant apparently does not argue that the evidence was not relevant and therefore should not have been admitted under Rule 401 of the Tennessee Rules of Evidence, but rather the Appellant argues that the evidence was prejudicial and that the prejudicial value outweighed the probative value under Rule 403. The Appellant argues that the State had other and presumably less prejudicial ways to prove the extent and the pattern of the burns. The trial judge conceded that the photographs might be prejudicial, but he found that their probative value outweighed their prejudicial effect.

The determination of whether evidence is relevant, and, if relevant, whether it should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court. *State v. Hill,* 885 S.W.2d 357, 361 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1994). *State v. Williamson,* 919 S.W.2D 69, (Tenn. Crim. App. 1995) (affirmed admission of photographs of dead fetus to prove viability of fetus at birth). In deciding these issues, the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as

other evidence that has been introduced during the course of the trial.  See *State v. Dulsworth,* 781 S.W.2d 227, 287 (Tenn. Crim. App., 1989) *perm. app. denied* (Tenn. 1989).  If a trial court in the exercise of its discretion finds that evidence is relevant within the meaning of Rule 401, and the accused is not entitled to have the evidence excluded for one of the grounds set forth in Rule 403, this court will not interfere with the exercise of this discretion unless it appears on the face of the record that the trial court clearly abused its discretion.  *State v. Burdis,* 905 S.W.2d 214 (Tenn. Crim. App. 1995), *perm. app. denied* (Tenn. 1995) (affirmed admission of post-mortem photographs of child to show visible signs of malnutrition and dehydration); *State v. Bigbee,* 885 S.W.2d 797, 807 (Tenn. 1994) (affirmed admission of photographs of dead body of victim after several hours and showing "unpleasant" post-mortem lividity and some rigor mortis).

The fact  that relevant evidence is prejudicial does not mean the evidence must be automatically excluded.  This court said in *State v. Dulsworth,* as follows:  "Any evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law." 781 S.W.2d at 287;  *State v. Gentry*, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993), *perm. app. denied* (Tenn. 1994).  As Rule 403 states, the "danger of unfair prejudice" must "substantially outweigh" the probative value of the evidence before the accused is entitled to have the evidence excluded.  Even if the evidence is meant to dramatize the injury to the victim and tends as much to arouse the passions of the fact-finders as to present probative evidence, this court has not reversed the admission of such evidence when it touches on an element of the offense and when the evidence was not particularly harmful or unduly prejudicial.  *State v. Gaylor,* 862 S.W.2d 546, 557 (Tenn. Cr. App. 1992) (affirmed admission of physician describing the physiology of drowning where cause of death not an issue).

_____In the case *sub judice*, the victim testified that the Appellant threw an accelerant on him from the passenger side of a car.  A pattern of burns on the front and the right side of the victim's body would tend to corroborate that description of the incident and

would tend to dispute the theory mentioned at trial that a spark or other source ignited the paint thinner spontaneously. Therefore the burns were certainly relevant. As the case turned in large part on the believability of the victim's version of the incident, the probative value of the evidence was very great relative to its prejudicial value. The fact that other evidence was admitted on the degree and pattern of the burns makes the prejudicial impact of the display less rather than greater. See *Gaylor,* 862 S.W.2d at 557; *State v. Jefferson*, 938 S.W.2d 1 (Tenn. Cr. App. 1996).

In the case of *State v. Hill,* 885 S.W.2d 357 (Tenn. Cr. App. 1994), the defendant was charged with aggravated assault for allegedly cutting a victim with a straight razor. There was a stipulation between the State and the defendant that the victim had sustained bodily injury. The trial judge allowed the victim to remove his shirt and display his four large scars to the jury. The defendant argued that the prejudicial effect overweighed the probative value of the evidence, particularly given the stipulation. This court affirmed admission of the evidence on the grounds that "viewing the scars may have been relevant to the jury in determining the truth of what occurred on the night in question" and to determine whether the defendant's version of the incident or the victim's version was accurate. *Id.* at 361. In the case *sub judice,* the value of viewing the burns to determine what occurred on the night in question outweighed any prejudicial effect on the jury.

The Appellant's fourth issue is that he was subjected to double jeopardy by being convicted of and receiving sentences for both attempted first-degree murder and aggravated assault. This question is resolved by our holding on the first issue, the dismissal of the attempt to commit murder count. The Appellant's third issue is that the evidence in the case does not support convictions for attempt to commit first-degree murder and for aggravated assault. That issue of whether the evidence supports a conviction for attempted murder is pretermitted by our ruling on the Appellant's first issue. The issue then becomes whether or not the evidence in the record supports a conviction for aggravated assault.

9

The standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed. 2nd 560 (1979). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Cr. App. 1990). This court must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not by the appellate court. *Cabbage* at 835. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden to illustrate to the appellate court why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated § 39-13-102(a) defines aggravated assault in part as follows:

**Aggravated assault.** -- (a) A person commits aggravated assault who:

(1)    Commits an assault as defined in § 39-13-101, and:

(A)    Causes serious bodily injury to another; or

(B)    Uses or displays a deadly weapon. . .

Tennessee Code Annotated § 39-13-101 defines assault, as incorporated in the definition of aggravated assault, as follows:

10

**Assault.** -- (a) A person commits assault who:

(1)   Intentionally, knowingly or recklessly causes bodily injury to another;
. . . or . . .

(3)   Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

The victim in this case testified that, in the midst of an argument over an alleged theft by the victim, the Appellant intentionally threw combustible paint thinner on the victim and intentionally set the victim on fire.  This is the only direct evidence in the record of events in the victim's car.  The severity of the resulting burns is confirmed by the testimony of a nurse at the hospital, by the victim's testimony, by the display to the jury of the scars from the burns, and by the testimony of other eyewitnesses.  It is undisputed in the record that the victim's car burned on that evening and that the car burned in the vicinity of the Appellant's residence.  The testimony of the State's arson investigator supported the victim's version of the facts.

The Appellant's challenge to the proof in this case focused on alleged prior descriptions of the incident by the victim which were allegedly inconsistent with his testimony at trial, centered on the testimony of an aunt of the Appellant, and centered on the testimony of the Appellant's arson investigator.   The victim's prior statements about the incident always named the Appellant as the assailant and always involved the use of an accelerant to burn the victim intentionally.  The prior statements simply varied in the details of how the burning was accomplished by the Appellant.  These earlier statements were made very shortly after the incident,  while the victim was still in shock and still in the hospital and still suffering the immediate effects of the burns, and while the victim had I.V.'s in both arms.  A jury could very reasonably have believed that a man in the condition of the victim would not articulate with complete clarity the details of the assault, while able to recount the crime in general terms and with a clear and specific identification of the Appellant as the assailant.

11

The Appellant's aunt testified that she saw the victim leave the Appellant's residence in his car alone, without the Appellant. The aunt also testified concerning representations made to her by an officer which, under the other proof in the case, the officer simply could not have made at the time the aunt said he made them. Given the aunt's relationship to the Appellant and her demonstrably false testimony on another factual point, the jury could reasonably decline to believe the aunt on the issue of whether the Appellant was in the victim's car. See Tennessee Criminal Pattern Jury Instruction no. 42.06. Finally, the Appellant's arson expert did little to undermine the State's proof, and the jury would certainly have been entitled to give the State's expert more credibility than the Appellant's expert. The record supports the conviction for aggravated assault.

The Appellant's fifth issue is the assertion that the trial court erred in failing to require the State to produce during trial the handwritten notes of the State's arson expert. Prior to trial, the Appellant filed a discovery motion and a motion for the State agents to retain their rough notes. In neither of these motions did the Appellant request to be allowed to view or to receive a copy of these rough notes. The Appellant's counsel first asked to see the notes in question during the trial, during counsel's cross-examination of the expert, when it was determined that the notes were in Knoxville and not at trial. The trial judge declined to order the notes to be produced, and the Appellant did not move for a continuance in the trial. At the hearing on the Appellant's Motion for a New Trial, the notes were produced.

Had the Appellant moved in timely fashion to receive a copy of or to view the notes he would have been entitled to do so under Rule 16(1)(C) and (D). However, the Appellant did not seek to do so before trial. Arguably the Appellant could have sought the notes during the trial under Rule 26.2 of the Rules of Criminal Procedure. The Appellant did have before trial the typed report that the State's expert had prepared after examining the burned car and investigating the incident, which had incorporated information in the handwritten notes. In this context, the trial judge was justified in not

interrupting the expert's testimony to have him travel to another city to locate his notes. The Appellant did not move for a continuance of the trial and therefore the trial judge cannot be faulted for having failed to grant a continuance.

The Appellant received the handwritten notes after the trial and has been unable to identify any contradiction between the notes and the typed report or between the handwritten notes and the expert's testimony at trial. The Appellant merely argues that the handwritten notes were only one page long and the typed report eleven pages long, and he argues that one page could never be expanded into eleven pages, suggesting that the expert manufactured most of the information in the typed report to support the State's theory of the case. The expert testified, however, that he prepared the typed report in longhand in a separate document, which document was typed verbatim. Even if the judge's refusal to order production of the handwritten notes after completion of the expert's testimony under Rule 26.2 was error, absent significant variance between the contents of the handwritten notes and the contents of other evidence given by the expert, and absent proof of any substantial use to which the Appellant could have put the handwritten notes, it was harmless error.

The sixth and final error alleged by the Appellant is that the trial judge erred in giving the Appellant the maximum sentences for both the attempt to commit first-degree murder conviction and the aggravated assault conviction. As the attempted murder conviction has been dismissed, the remaining issue is whether the sentence of fifteen years, the maximum for aggravated assault for a Range III offender, was excessive. The Appellant alleges specifically that the trial court erred in applying the enhancing factors set out in Tennessee Code Annotated § 40-35-114(5), (6), and (10). The Appellant also complains that the trial judge announced a sentence and only subsequently specified the enhancing factors that he considered. Finally, the Appellant complains that the trial judge based his sentence on a speculative parole date.

13

The standard of review of the denial of probation and of the length of the sentence given in this case is set out in Tennessee Code Annotated § 40-35-401(d) as being a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal was taken are correct. The requirement that the appellate court presume the correctness of the determinations made by the trial court is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the defendant to show that the sentence imposed was improper. *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991) In conducting this *de novo* review of a sentence, the appellate court must consider any evidence received at the sentencing hearing, the presentence report, the principles of sentencing, the arguments of counsel relative to sentencing alternatives, the nature and characteristics of the offense, any mitigating and enhancing factors, any statements made by the defendant in his own behalf, and the defendant's potential or lack of potential for rehabilitation or treatment, the factors set out in Tennessee Code Annotated § 40-35-210(b) for the trial judge to consider in setting the specific sentence and the appropriate sentencing alternatives. *Ashby; State v. Thomas,* 755 S.W.2d 833 (Tenn. Crim. App. 1988).

The trial judge applied a total of six enhancement factors found in Tennessee Code Annotated § 40-35-114. It is undisputed that the following three factors were present and were properly considered by the trial court: (1) an extensive prior criminal history; (13)(B) the offense was committed while the Appellant was on parole from another felony conviction; and (16) the crime was committed under circumstances under which the potential for bodily injury to a victim was great. The Appellant contends that the trial judge erred in applying these three factors: (5) the Appellant treated the victim with exceptional cruelty during the commission of the offense; (6) the personal injuries inflicted on the victim were particularly great, and (10) the defendant had no hesitation about committing a crime when the risk to human life was high.

Factors that are inherent in a particular offense, even if not designated as an element, may not be applied to enhance the length of a defendant's sentence. *State v. Claybrooks,* 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994) *perm. app. denied,* (Tenn. 1995). Our Supreme Court has held that factor (10), involving a high risk to human life, is not inherent in the offense of aggravated assault and therefore can in an appropriate case be used to enhance a sentence for aggravated assault. *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994). However, this court has held that a high risk to human life is inherent in aggravated assault committed with a deadly weapon, as opposed to aggravated assault resulting in serious bodily injury. *State v. Hill,* 885 S.W.2d 357, 363 (Tenn. Crim. App.) *perm. app. denied* (Tenn. 1994).

Our Supreme Court held in *Jones* that factor (6), involving particularly great personal injuries, is inherent in the crime of aggravated assault and therefore generally cannot be considered as an enhancing factor in such a case. *Jones* at 602. However, this court has held that factor (6) can be used to enhance in an appropriate case where the aggravated assault was based on the use of a deadly weapon, rather than based on serious bodily injury. *State v. Franklin,* 1996 Tenn. Crim. App. LEXIS 701, No. 01C01-9511-CR-0383 (Tenn. Crim. App. at Nashville, Nov. 8, 1996). However, in a case where the aggravated assault conviction relies on use of a deadly weapon, enhancement factor (10) cannot be used because it is inherent in the crime. *Id.* This court has also held that in a case in which the victim of an aggravated assault also suffered "significant property damage", factor (6) can be used to enhance the punishment. *State v. Turner,* 1995 Tenn. Crim. App. LEXIS 906, No. 01C01-9402-CR-00068 (Tenn. Crim. App. at Nashville, Nov. 15, 1995) This court has held that factor (5), exceptional cruelty to the victim, is not necessarily an essential element of aggravated assault and can therefore be applied to enhance a sentence in such a case. *State v. Bennett,* 1994 Tenn. Crim. App. LEXIS 798, No. 03C01-9403-CR-104 (Tenn. Crim. App. at Knoxville, Dec. 8, 1994); *State v. Chadwick,* 1995 Tenn. Crim. App. LEXIS 816, No. 01C01-9501-CC-00414 (Tenn. Crim. App. at Nashville, Oct. 4, 1995); *State v. Caudill,* 1997 Tenn. Crim. App. LEXIS 8, No.

03C01-9510-CC-00338 (Tenn. Crim. App. at Knoxville, Jan. 9, 1997). In *Bennett*, "exceptional cruelty" was defined as "cruelty above that needed to effectuate the crime." *Bennett.*

The indictment in the case *sub judice* alleged aggravated assault that resulted in serious bodily injury. Therefore enhancement factors (10) and (5) can be applied in the appropriate case. Throwing an accelerant on a large part of a victim's body, while the victim is seated in a car, and then setting the victim on fire is clearly both exceptionally cruel and cruel beyond what was necessary to effectuate the crime. Appellant obviously acted without hesitation when the risk to human life was extremely high. Factor (6) arguably should not have been applied by the trial judge, although there was heavy property damage to the victim's automobile. Even without application of factor (6), the application of the other five enhancement factors present in this case was certainly sufficient to support the trial judge's sentence of fifteen years for aggravated assault.

The trial judge announced his sentences before he discussed the enhancing factors which he applied. It does not follow that the trial judge necessarily arrived at a sentence on other criteria and then sought enhancing factors to justify his conclusions. It appears from the record that the trial judge first applied the enhancing factors and sentencing considerations, then announced his sentences, and then announced the enhancing factors that he had previously applied in his mind to arrive at the sentence he had previously announced. The procedure is not improper *per se* and was not improper in this case. The trial judge did mention on the record that the Appellant would be subject to parole at a date earlier than some would expect, the record does not support the conclusion that the trial judge relied on that conclusion to determine the sentences he gave.

The State in a footnote in its brief on appeal has pointed out that the trial judge did not order that the sentences given in these cases be served consecutively to the sentence for which the Appellant was on parole at the time that he committed these new offenses. Rule 32(c)(3)(A) of the Tennessee Rules of Criminal Procedure requires that

16

a new sentence for a felony be served consecutively to previously imposed felony sentences which are not yet fully served and for which the defendant was on parole at the time of the commission of the new felony. The new sentence is to be served consecutively "whether the judgment explicity so orders or not." Tenn. R. Crim. P. 32(c)(3). Therefore the State is correct in requesting that this court make clear in our judgment rendered here that the new sentences are to be served consecutively to the prior sentence for which the Appellant was on parole.

The conviction for attempt to commit first degree murder is dismissed. The convictions for aggravated assault and resisting arrest are affirmed, and the sentences for these two convictions are affirmed. The Appellant is sentenced to fifteen years as a Range III offender for aggravated assault, to be served consecutively to the Appellant's prior sentence imposed following conviction for aggravated assault in Cocke County Criminal Court case number 5003. The Appellant is sentenced to eleven months and twenty-nine days for resisting arrest, which sentence will be served concurrently with the Appellant's new sentence for aggravated assault.

_____


_____LEE RUSSELL, SPECIAL JUDGE


CONCUR:


_____
WILLIAM M. BARKER, JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE