IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2003

## STATE OF TENNESSEE  v.  CLARA JEAN NEBLETT

**Direct Appeal from the Criminal Court for Robertson County**
**No. 01-0432     Michael R. Jones, Judge**

---

### No. M2002-01494-CCA-R3-CD - Filed May 19, 2003

---

Appellant, Clara Jean Neblett, was indicted by the Robertson County Grand Jury for aggravated assault and unlawful possession of a weapon.  A jury found Appellant guilty of both counts. Appellant was sentenced to four years for her aggravated assault conviction and thirty days for her possession of a weapon conviction, to be served concurrently.  In this appeal, Appellant challenges: (1) the trial court's ruling that defense counsel could not impeach the victim's testimony using extrinsic evidence of a prior bad act; (2) the trial court's denial of post-trial diversion; and (3) the trial court's refusal to apply mitigating factors to Appellant's sentence.  After a careful review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal) and Roger Nell, District Public Defender; and Ann Kroeger, Assistant Public Defender, Clarksville, Tennessee (at trial) for the appellant, Clara Jean Neblett.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

Although Appellant does not challenge the sufficiency of the convicting evidence, a summary of the facts at trial is helpful in addressing the issues presented on appeal.

Thomas Burr and Cecilia Marie Davis had a relationship for six years.  Mr. Burr is the father of Ms. Davis' two children.  Before and during his relationship with Ms. Davis, Mr. Burr also dated Appellant.  On May 16, 2001, at 7:27 a.m., Appellant called Ms. Davis and said, "bitch, you need

to come get Thomas. He's been stalking me all night." At around 9:30 a.m., Ms. Davis drove her children to her grandmother's house. On the way to her grandmother's house, she drove by Appellant's mother's house and saw Appellant sitting on the front porch.

After she dropped off her children at her grandmother's house, Ms. Davis drove to Sherry Darden's house and asked her to ride around with her. They drove past Appellant's house and saw a shirt hanging out of Appellant's car trunk. On a prior occasion, Ms. Davis had seen a shirt that she gave Mr. Burr hanging out of Appellant's car trunk, and she interpreted the gesture as a signal that something sexual had occurred between Appellant and Mr. Burr. After seeing the shirt, Ms. Davis turned around and drove by again to see if it was the shirt that Mr. Burr had worn the night before. She saw Appellant run out of her house and get into her car. Appellant drove towards Ms. Davis, and when their cars met, they both stopped. They began to argue. Appellant then pulled her car forward and stepped out of the car. Ms. Davis got out of her vehicle.

Ms. Davis did not see anything in Appellant's hand, and she began running towards Appellant's car. Ms. Davis then observed something in Appellant's hand, and she picked up a stick that was lying on the ground. Appellant got back inside her car and drove further up the street. She then got out of her car and began firing a gun at Ms. Davis. Ms. Davis ran around to the passenger side of Appellant's car to shield herself. Appellant fired again. Ms. Davis ran back to her car, and Appellant continued firing. Ms. Davis was shot twice in the breast. She drove to her apartment where she kept a gun. She testified that she intended to retaliate against Appellant. She drove around looking for Appellant, but did not find her. She then drove back to her apartment and threw the gun behind the apartments. Officer Haynes arrived and called an ambulance. Ms. Davis testified that she had never initiated an attack on Appellant.

On cross-examination, Ms. Davis testified that she probably would have hit Appellant with the "stick" that she found lying on the side of the road. She later testified that the "stick" was really a table leg or chair leg. Ms. Davis also admitted on cross-examination that she was arrested in 1997 for assaulting Appellant with a stick, but she testified that she did not swing the stick at Appellant because Appellant was inside her car.

Officer Charles Haynes responded to a call that shots were fired on Richard Street in Springfield, Tennessee, on May 16, 2001. When he arrived at the corner of Fourteenth and Richard Street, a bystander on the street told him that a person had been shot and that she had gone to Applewood Apartments. Officer Haynes went to that address and found Cecilia Davis. She had been shot in the chest. She was standing beside a white Chevrolet Blazer that was parked in front of the apartments. Sherry Darden was also standing beside the vehicle. Officer Haynes testified that Ms. Davis told him that she had jumped out of her vehicle with a stick in her hand.

Sherry Darden is Thomas Burr's sister. She had known Ms. Davis and Appellant for about six years. She knew that the two women had disliked each other for a long time. She testified that Ms. Davis called her upset that morning. Ms. Davis arrived at Ms. Darden's house to pick her up. They then drove by Appellant's house and saw a shirt hanging out of the trunk of Appellant's

vehicle. Ms. Davis suspected that the shirt belonged to Thomas Burr, and she turned around and drove by Appellant's house again. Appellant came outside, got into her car, and began driving towards Ms. Davis and Ms. Darden. Appellant and Ms. Davis stopped their cars in the street and began calling each other names. Appellant and Ms. Davis both got out of their cars at the same time, and Ms. Darden heard a gunshot. She got out of the car and saw Appellant standing on the driver's side of her own vehicle and Ms. Davis standing on the passenger side of Appellant's vehicle. Appellant fired a gun at Ms. Davis over the car. Ms. Darden yelled at her to run away. They both got back inside Ms. Davis' car and drove away. Ms. Davis noticed that she was bleeding. She drove to her apartment. Ms. Darden told the police that she saw Appellant chasing Ms. Davis around Appellant's vehicle. She testified that she saw a stick lying on the ground beside Ms. Davis' car.

Appellant testified that she had known Thomas Burr for about ten years. She called Ms. Davis on the morning of May 16, 2001, to tell her that she "had a run-in with Thomas" the night before. Appellant testified, "I wanted her to know that if he was her man, that she needed to control him." Appellant shut Mr. Burr's shirt in her trunk in order to "make a point." She wanted Ms. Davis to see that it was the shirt that Mr. Burr was wearing the previous night. After Appellant called Ms. Davis, she drove to her mother's house. From her mother's front porch, she saw Ms. Davis drive by. Appellant later went home. She saw Ms. Davis drive past her house. Ms. Davis drove past her house again, and Appellant went outside and got into her car. She testified that she attempted to leave, but Ms. Davis "bumrushed" her and blocked her in the driveway. Ms. Davis' car window was down, and Appellant saw that she had a stick in her hand. Ms. Davis threatened Appellant, saying, "bitch, I am going to beat your ass." Appellant got out of her car, and Ms. Davis ran towards her with a stick. Appellant had a gun. Ms. Davis saw the gun and ran around to the passenger side of Appellant's vehicle. Appellant fired at Ms. Davis over the top of her car. Ms. Davis reached into Appellant's car and picked up a pouch that was lying on the passenger seat and said, "bitch, I am fixing to whip your ass." Ms. Davis saw that the pouch was empty and threatened Appellant again with the stick. Appellant fired at Ms. Davis again. Ms. Davis ran back to her vehicle, and Appellant stopped firing. Appellant drove to her mother's house. She disposed of the gun on Richard Street. She then left her mother's house and drove home. She waited on the porch until the police arrived.

**Evidence of Prior Bad Acts**

Appellant contends that the trial court erred by excluding the testimony of Officer Robert Murray regarding Ms. Davis' arrest in October of 1997 for assaulting Appellant with a stick.

On cross-examination, Ms. Davis admitted that she was arrested in October of 1997 for assaulting Appellant with a stick. She denied, however, having actually swung the stick at Appellant. She testified, "I couldn't swing the stick at her because Ms. Neblett wouldn't get out of her car at that time." Defense counsel further questioned the victim, asking "if Officer Robert Murray were here to testify that he did see you swinging a stick at her, he would not be telling the truth?" Ms. Davis responded that the officer "would not be telling the truth." In this appeal, Appellant argues that the trial court erred by excluding the testimony of the arresting officer that he saw Ms. Davis swing a stick at Appellant.

Appellant's only offer of proof was submitted during a jury-out hearing and was stated by defense counsel as follows: "[Ms. Davis] testified on cross examination that she did not assault [Appellant] with a stick and Officer Murray's testimony would be that he actually witnessed her assaulting her, in his opinion, with a stick. . . ." Officer Murray did not testify during the jury out hearing. The trial court ruled that Officer Murray's testimony regarding the arrest was not admissible because it was collateral proof of a prior bad act, and defense counsel was "stuck with the answer" Ms. Davis (the victim in this case) gave on cross-examination. Questions regarding the admissibility of evidence rest within the sound discretion of the trial court, and this court will not disturb a ruling by the trial court absent an abuse of discretion. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Tennessee Rule of Evidence 608(b) allows cross-examination of a witness about specific instances of conduct where probative of truthfulness or untruthfulness. Tenn. R. Evid. 608(b). The act of assaulting Appellant with a stick, however, is not probative of the victim's truthfulness or untruthfulness. Cross-examination of the victim regarding the arrest was not permissible under Rule 608(b). The State did not object to the testimony on this basis. Nevertheless, where cross-examination regarding prior bad acts of a witness is permissible, Rule 608(b) specifically prohibits the admission of extrinsic evidence to rebut a denial of a prior bad act. *Id*. "When such cross-examination is permitted, the answer of the witness shall be conclusive." *State v. Morgan*, 541 S.W.2d 385, 390 (Tenn. 1976).

Generally, evidence "of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). This evidence may be admitted for some other purpose, however, if it is relevant to a material issue and if its probative value is not outweighed by the danger of its prejudicial effect. Tenn. R. Evid. 404(b); *State v. Howell*, 868 S.W.2d 238, 254 (Tenn. 1993).

This Court has held that in certain circumstances, specific acts of violence by the victim are admissible to corroborate the defendant's assertion that the victim was the first aggressor. *State v. Furlough*, 797 S.W.2d 631 (Tenn. Crim. App. 1990); *State v. Hill*, 885 S.W.2d 357 (Tenn. Crim. App. 1994); *State v. Ruane*, 912 S.W.2d 766, 780 (Tenn. Crim. App. 1995). Before proof of first aggression may be admitted, certain conditions must be satisfied. First, the issue of self-defense must have been raised by the evidence in the record. *Ruane*, 912 S.W.2d at 780. Therefore, only after the issue of self-defense was raised by the evidence should Appellant have been permitted to introduce evidence concerning the victim's prior arrest for assault. The trial court must also determine whether there is a factual basis underlying the proffered testimony and whether the probative value of the evidence outweighs any prejudicial effect. *Id*.

The trial court in this case did not weigh the probative value of the evidence against the danger of unfair prejudice to Appellant on the record. We will not reach the inquiry of whether Officer Murray's testimony was admissible to corroborate Appellant's assertion that the victim was the first aggressor. For the reason set forth below, we conclude that the probative value of Officer Murray's testimony was slight at best and the error, if any, was harmless.

Appellant's testimony did not contradict the victim's testimony. *See* Tenn. R. App. P. 36(b). On direct examination, Appellant testified as follows:

DEFENSE COUNSEL:  Has she also assaulted you with a stick?
APPELLANT:  Well, she assaulted my car with a stick.
DEFENSE COUNSEL:  And you were in the car when that happened?
APPELLANT:  I was in my car.
DEFENSE COUNSEL:  And that actually resulted in her arrest for assault, is that true?
APPELLANT:  Yes ma'am.

Appellant is not entitled to relief on this issue.

**Sentencing**

Appellant challenges the trial court's denial of her request for post-trial diversion and the length of her sentence.

When a defendant challenges the length or manner of service of a sentence, this court's review of the sentence is *de novo* with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, our review is *de novo* with no presumption of correctness. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997).

*Post-Trial Diversion*

Appellant contends that the trial court abused its discretion in denying judicial diversion. Tennessee Code Annotated section 40-35-313 provides that, upon a finding of guilt, a trial court may place a defendant on probation without imposing a judgment of conviction. The statute further allows for dismissal of the charges and expungement upon successful completion of the term of probation. *See* Tenn. Code Ann. § 40-35-313 (1997).

The decision whether to grant or deny judicial diversion rests within the discretion of the trial court. *State v. Cutshaw*, 967 S.W.2d 332, 334 (Tenn. Crim. App. 1997). We review the record for "any substantial evidence to support the refusal." We will not reverse the trial court's decision absent an abuse of discretion. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). In determining whether a defendant is qualified for judicial diversion, the trial court should consider: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant as well as others; (7) whether judicial diversion would serve the interests of justice; (8) the defendant's attitude; (9) the defendant's behavior since arrest; (10) the defendant's home environment; (11) drug usage; (12) emotional

stability; (13) past employment; (14) general reputation; (15) family responsibility; and (16) attitude of law enforcement. *Cutshaw*, 967 S.W.2d at 343-44.

The trial court found that Appellant was not amenable to correction, and that the circumstances of the offense weighed against judicial diversion. Specifically, the trial court found that Appellant planned the crime, taunting her victim and arming herself. The trial court found several factors that weighed in Appellant's favor, including her lack of a criminal record, her social history, her physical and mental health, her behavior since arrest, her home environment, her past employment, and her reputation. The trial court concluded, however, that judicial diversion was not appropriate. We agree. A pattern of violence between Appellant and the victim had continued since 1996. Defendant taunted the victim by calling her and displaying Mr. Burr's shirt. Appellant also armed herself with a deadly weapon in anticipation of a confrontation with the victim. There is substantial evidence in the record that supports the trial court's denial of judicial diversion. Defendant is not entitled to relief on this issue.

*Mitigating Factors*

Appellant also argues that the trial court erred in refusing to apply mitigating factors (2), that Appellant acted under strong provocation, and (3), that substantial grounds exist tending to excuse or justify the criminal conduct. Tenn. Code Ann. § 40-35-113 (1997). The jury rejected Appellant's claim of self-defense. At the conclusion of the sentencing hearing, the trial court found that Ms. Davis presented "no threat to [Appellant] whatsoever when [Appellant] fired across the car," and declined to apply either mitigating factor.

We note that if any provocation occurred, it was Appellant who provoked the victim by phoning her, displaying Mr. Burr's shirt, and confronting the victim in the street. Appellant had the opportunity to leave rather than confront the victim. Appellant testified that she drove up the street, and the victim chased her on foot, threatening to beat her up with a stick. Appellant then stopped her car and got out of it. She could have driven away. Appellant shot at the victim while the victim was on the opposite side of the car from Appellant. Appellant also fired twice at the victim after the threat of bodily harm had vanished. We agree with the trial court and conclude that mitigating factors (2) and (3) do not apply to Appellant's sentence.

## CONCLUSION

After a careful review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE