# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### MAY 1998 SESSION

FILED

June 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 03C01-9708-CR-00330 |
| Appellee, | ) | |
| | ) | SULLIVAN COUNTY |
| VS. | ) | |
| | ) | HON. PHYLLIS H. MILLER, |
| LULA J. FLANIGAN, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Kidnapping |
| | ) | and Aggravated Assault) |

FOR THE APPELLANT:

**STEPHEN M. WALLACE**
District Public Defender

**TERRY L. JORDAN**
Assistant District Public Defender
P.O. Box 839
Blountville, TN 37617-0839

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL J. FAHEY, II**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**H. GREELEY WELLS, JR.**
District Attorney General

**EDWARD E. WILSON**
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617-0526

OPINION FILED: _____

AFFIRMED

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Lula J. Flanigan, was convicted by a Sullivan County jury of one (1) count of aggravated kidnapping and three (3) counts of aggravated assault. The trial court sentenced her to concurrent terms of eleven (11) years for aggravated kidnapping and six (6) years for each aggravated assault conviction. On appeal, defendant contends that the trial court erred in failing to merge her aggravated kidnapping conviction with one conviction for aggravated assault as the kidnapping was merely incidental to the assault. *See* State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). She further claims that the trial court erred in imposing her sentences. After a review of the record before this Court, we find no reversible error. Therefore, the judgment of the trial court is affirmed.

**FACTS**

In 1996, defendant was an employee of an Applebee's restaurant in Kingsport, Tennessee. On February 20, defendant had a disagreement with Melinda Parrott, the assistant manager of Applebee's, concerning defendant's employment duties. Although Parrott asked defendant to stay after her shift so that the two could work out their differences, defendant left that afternoon without seeing Parrott.

The next day, when Parrott arrived at work, she once again told defendant that she needed to speak with defendant after her work shift ended. Instead, defendant resigned and left the restaurant at approximately 10:30 a.m. Defendant went to her residence, where she consumed an excessive amount of vodka. Approximately two hours later, defendant got her gun and returned to Applebee's.

When defendant returned, Parrott was helping wait tables during the lunch hour. Defendant approached Parrott and asked to speak with her. When Parrott answered that she was busy at that time, defendant replied, "you're going to talk to me now, bitch." In order to avoid a scene, Parrott followed defendant to the kitchen

2

area, where defendant pushed Parrott to the floor. When Parrott demanded that defendant leave, defendant brandished her gun and led Parrott at gunpoint to the outside "dock" area behind the restaurant.

On their way outside, defendant and Parrott passed Shawn Spears, an Applebee's employee. Parrott told Spears that defendant had a gun, and Spears followed them outside. Rebecca Stevens, a waitress, saw defendant fire a gun towards Parrott and, out of fear that defendant had shot Parrott, also went outside to the "dock" area.

Parrott testified that after she and defendant reached the "dock" area, defendant told Parrott that "she had bullets in the gun, and she was going to use them." Spears stepped in front of Parrott and tried to calm defendant, and defendant fired a shot into the air. She pointed her gun at Parrott, Spears and Stevens, demanded that they step away from her and fired another shot into the air. Subsequently, defendant's sister, also an Applebee's employee, came outside and was able to calm defendant. Defendant then left through a back gate and was later apprehended.

Approximately one and one-half (1 ½) hours after the incident, defendant's blood alcohol level was tested and found to be 0.33%. At trial, the parties stipulated that defendant's blood alcohol level was 0.20% at 7:38 p.m., approximately seven (7) hours after the incident.

Defendant testified on her own behalf at trial. She stated that she was an alcoholic and was suicidal at the time of the offenses. She testified that after she resigned on February 21, she went to her apartment and began drinking vodka. She was angry with herself for quitting her job and contemplated committing suicide. She did not recall much of what happened when she returned to Applebee's; however, she testified that she did not intend to kill Parrott.

Dr. Kenneth E. Ferslew, a toxicologist, testified for the defense as well. Dr. Ferslew stated that defendant's blood alcohol level would have been approximately 0.358% at the time of the incident. He further testified that defendant would experience a change in mood and personality, a loss of inhibition and might

3

demonstrate personality traits that she would not otherwise exhibit.

Defendant was charged with one (1) count of attempted first degree murder of Parrott, one (1) count of aggravated assault of Spears, one (1) count of aggravated assault of Stevens and one (1) count of aggravated kidnapping of Parrott. The jury found defendant guilty of three (3) counts of aggravated assault[1] and one (1) count of aggravated kidnapping. The trial court sentenced defendant to concurrent terms of eleven (11) years for aggravated kidnapping and six (6) years for each aggravated assault conviction. From these convictions and sentences, defendant brings this appeal.

## STATE V. ANTHONY

In her first issue, defendant claims that the trial court erred in sustaining her aggravated kidnapping conviction when she was convicted of the aggravated assault of Parrott arising out of the same facts. She contends that the aggravated kidnapping is "essentially incidental" to the aggravated assault under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). Therefore, she argues that her conviction for aggravated kidnapping must merge with her conviction for aggravated assault of Parrott.

In State v. Anthony, our Supreme Court addressed the issue of whether dual convictions of armed robbery and aggravated kidnapping arising out of the same criminal episode could constitutionally stand as a matter of due process. The Court held that when kidnapping is "essentially incidental" to another offense, due process prohibits a conviction for kidnapping. Id. at 306-307. The test to be applied is whether, under the facts of each case, "the confinement, movement or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to

---

[1] The jury found defendant not guilty of the attempted murder of Parrott but guilty of aggravated assault upon Parrott. The parties recognized, as does this Court, that aggravated assault is not ordinarily a lesser grade or lesser included offense of attempted first degree murder. *See* State v. Trusty, 919 S.W.2d 305, 307 (Tenn. 1996). However, unlike Trusty, the indictment in this case contained language alleging an aggravated assault. The parties agreed, therefore, that aggravated assault should be charged to the jury. Under this indictment, this was proper and was not in violation of Trusty. 919 S.W.2d at 312-13.

support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id. at 306. The determination of whether the convictions for kidnapping and the linked felony can stand is fact specific, as there is no prohibition against convictions for both offenses "simply because they arise out of the same criminal episode." Id. at 307.

In the later case of State v. Dixon, the Supreme Court clarified its holding in Anthony, stating:

> The Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

957 S.W.2d 532, 534-35 (Tenn. 1997). The Court determined that the resolution of an Anthony issue is based upon two inquiries. First, the court must decide whether the "movement or confinement was beyond that necessary to consummate" the associated felony. Id. at 535. If this can be answered in the affirmative, then the next inquiry becomes "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. (citing Anthony, 817 S.W.2d at 306). If both prongs are met, dual convictions for kidnapping and the additional felony are proper.

In the case *sub judice*, we find that defendant's convictions for the aggravated kidnapping and aggravated assault upon Parrott are appropriate. Defendant led Parrott at gunpoint from the kitchen to the "dock" area outside, thereby substantially interfering with her liberty. Tenn. Code Ann. § 39-13-302. The kidnapping was not essentially incidental to the assault, as the movement from the kitchen to the "dock" was not necessary to commit the aggravated assault. Furthermore, we find that forcibly moving Parrott outside could have prevented Parrott from summoning help, lessened the defendant's risk of detection, and increased Parrott's risk of harm.

Defendant argues that the aggravated kidnapping conviction should not be

upheld because the detention was not lengthy and Parrott was moved only a short distance. However, "it is the purpose of the removal or confinement and not the distance or duration that supplies a necessary element of aggravated kidnapping." State v. Dixon, 957 S.W.2d at 535. Therefore, we conclude that the trial court properly upheld both convictions of aggravated kidnapping and aggravated assault of Parrott. *See* State v. Joseph Tipler, C.C.A. No. 02C01-9611-CR-00384, Shelby County (Tenn. Crim. App. filed January 30, 1998, at Jackson).

This issue is without merit.

## SENTENCING

Next, defendant claims that the trial court erred in imposing her sentences for aggravated kidnapping and aggravated assault. She argues that the trial court imposed excessive sentences due to the misapplication of enhancement and mitigating factors. She also contends that the trial court erroneously failed to consider that she is a favorable candidate for alternative sentencing for her aggravated assault convictions.

### A.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing

6

and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. *See* State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); *see* Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

**B.**

The trial court found that the following enhancement factors applied for all offenses:

> (1) that defendant had a previous history of criminal convictions or behavior, Tenn. Code Ann. § 40-35-114(1);
>
> (2) that defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10); and
>
> (3) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16).

The trial court found no applicable mitigating factors.

**C.**

7

The record supports the trial court's finding that defendant has a previous history of criminal convictions and criminal behavior. Tenn. Code Ann. § 40-35-114(1). The pre-sentence report indicates that defendant has numerous convictions for driving under the influence. Furthermore, defendant testified that she previously used illegal drugs. The trial court properly considered this enhancement factor.

**D.**

Defendant contends that the trial court erred in applying Tenn. Code Ann. § 40-35-114(10) and (16) to her convictions for aggravated kidnapping and aggravated assault. She argues that by committing these offenses with a deadly weapon, one necessarily creates a high risk to human life and a great potential for bodily injury. This Court has previously held that Tenn. Code Ann. § 40-35-114(10) and (16) cannot be used as enhancement factors for the offenses of aggravated assault and aggravated kidnapping as they are inherent in the offenses. *See* State v. Hill, 885 S.W.2d 357, 363-64 (Tenn. Crim. App. 1994); State v. Kern, 909 S.W.2d 5, 7-8 (Tenn. Crim. App. 1993).

However, where there is evidence of individuals in the vicinity subject to injury in addition to the victim, the use of these factors is proper. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). With regard to aggravated kidnapping, there was testimony that approximately 100 patrons were in the restaurant as well as numerous employees in the kitchen and dining area. There were many other people who potentially could have been injured by defendant's actions. Furthermore, as to the aggravated assaults, the trial court found that enhancement factors ten (10) and sixteen (16) would apply because, "[t]here were other people coming and even [defendant's] sister came to the door. There were so many people around, it was lunch time, this was in a, a small little [fenced-in] area. Any bullet could have gotten, gone awry there and it was just a great danger to everyone." We find that the trial court properly applied these enhancement factors.

**E.**

Defendant also contends that the trial court failed to consider in mitigation that she voluntarily released Parrott alive. Tenn. Code Ann. § 39-13-304(b)(2)

8

provides that if, after committing an aggravated kidnapping, the offender "voluntarily releases the victim alive . . . such actions shall be considered by the court as a mitigating factor at the time of sentencing." However, under the present facts, defendant chose to abandon her course of action only in response to her sister's persistent pleading. This factor would be entitled to little weight.

**F.**

Defendant also contends that the trial court should have found in mitigation that she accepted responsibility for her actions, showed remorse after the incident and was highly intoxicated at the time of the incident. The trial court specifically found that defendant did not accept responsibility for her actions in that defendant relied on her over-consumption of alcohol as an excuse for her behavior. Additionally, the trial court noted that there was testimony at trial that defendant had threatened Parrott's life while incarcerated for the present charges.[2]

Furthermore, voluntary intoxication is not a proper mitigating circumstance. A defendant's sentence may be mitigated if the defendant was suffering from a "mental or physical condition that significantly reduced [her] culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor." Tenn. Code Ann. § 40-35-113(8) (emphasis added).

We agree with the trial court that none of the above is an appropriate mitigating factor under the present facts.

**G.**

The trial court appropriately applied three (3) enhancement factors in determining defendant's sentences. Even though the trial court should have applied defendant's voluntary "release" of Parrott in mitigation, that factor would be entitled to little weight. Moreover, no other mitigating factors are supported by the evidence. Accordingly, defendant's sentences of eleven (11) years for aggravated kidnapping and six (6) years for each aggravated assault conviction are appropriate.

This issue has no merit.

---

[2] Toni Harrell was in the Sullivan County jail with defendant after defendant was arrested on the present charges. Harrell testified that defendant told her that she was "not finished" with Parrott and that she intended to shoot Parrott on the day in question.

**H.**

Defendant also suggests that the trial court erred in failing to consider alternative sentencing. However, when imposing defendant's sentences, the trial court noted that because defendant's sentences were to run concurrently, it would be "ridiculous" to consider alternative sentencing. We agree. Defendant is statutorily ineligible for alternative sentencing for her aggravated kidnapping conviction. *See* Tenn. Code Ann. §§ 40-35-303(a), 40-36-106(a). She is, therefore, required to serve that sentence in incarceration. Because the trial court ordered that defendant's six (6) year sentences for aggravated assault run concurrently with her eleven (11) year sentence for aggravated kidnapping, it would serve no purpose to consider alternative sentencing for defendant's aggravated assault convictions.

This issue is without merit.

**CONCLUSION**

We find that due process is not offended by defendant's convictions for both aggravated kidnapping and aggravated assault of Parrott. Furthermore, we find that defendant received proper sentences for her convictions. Accordingly, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOSEPH M. TIPTON, JUDGE**

10

_____

**CURWOOD WITT, JUDGE**