**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MAY SESSION, 1999**

**FILED**

**September 20, 1999**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9803-CR-00075** |
| | ) | |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. JAMES C. BEASLEY, JR.,** |
| **DOROTHY J. FLEMING,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(AGGRAVATED ASSAULT)** |


| FOR THE APPELLANT: | FOR THE APPELLEE: |
|---|---|
| **WAYNE CHASTAIN** | **JOHN KNOX WALKUP** |
| 66 Monroe, Suite 804 | Attorney General & Reporter |
| Memphis, TN 38103 | |
| | **PETER M. COUGHLAN** |
| **STEFFEN SCHREINER** | Assistant Attorney General |
| 369 North Main Street | 2nd Floor, Cordell Hull Building |
| Memphis, TN 38103 | 425 Fifth Avenue North |
| | Nashville, TN 37243 |
| | |
| | **JOHN W. PIEROTTI** |
| | District Attorney General |
| | |
| | **PAUL H. WULFF** |
| | Assistant District Attorney General |
| | Criminal Justice Center, Suite 301 |
| | 201 Poplar Avenue |
| | Memphis, TN 38103 |

OPINION FILED _____

REVERSED AND REMANDED

THOMAS T. WOODALL, JUDGE

# OPINION

On April 10, 1997, the Shelby County Grand Jury indicted Appellant Dorothy J. Fleming and co-defendant James W. Fleming for aggravated assault. Following a jury trial on January 6–8, 1998, Appellant was convicted of aggravated assault and the co-defendant was convicted of simple assault. After a sentencing hearing on February 6, 1998, the trial court sentenced Appellant as a Range I standard offender to three months of house arrest followed by two years and nine months of probation and the court placed the co-defendant on judicial diversion. Appellant challenges her conviction, raising the following issue: whether the trial court erred when it ruled that Appellant could not introduce evidence about an alleged prior incident in which the victim acted violently towards a third party. The co-defendant has not joined in this appeal. After a review of the record, we reverse the judgment of the trial court and we remand this matter for a new trial.

## FACTS

Michael Smith testified that in November of 1996, he was living in an apartment with Appellant's daughter Delois Pate Smith and two of Ms. Smith's young children. Although Mr. Smith and Ms. Smith were not married at that time, they were married at the time of trial.

Mr. Smith testified that while he was alone with Ms. Smith's two small children on November 20, 1996, he received a telephone call from Appellant at approximately 4:30 p.m. During the conversation, Appellant and Mr. Smith began cursing each

other and Appellant then stated that she was going to come to the apartment. Shortly thereafter, Ms. Smith arrived home from work.

Mr. Smith testified that later that day, he heard pounding on the door. When he opened the door, Appellant's son James Fleming entered the apartment, pointed a gun at him, and ordered him to get on the floor. Shortly thereafter, Appellant, Appellant's son Lemoyne Pate, and Ms. Smith's son Terrence Clark entered the apartment. Appellant then grabbed Mr. Smith and he knocked her hand away.

Mr. Smith testified that at this point, Appellant stabbed him with a knife and then Mr. Fleming stabbed him. Mr. Smith then fell to the ground, and Appellant, Mr. Clark, Mr. Pate, and Mr. Fleming began kicking him. Mr. Smith testified that he was unarmed during this incident.

Delois Pate Smith testified that on November 20, 1996, Mr. Smith opened the door to their apartment and Appellant, Mr. Fleming, Mr. Pate, and Mr. Clark came rushing in and Mr. Fleming began waiving a gun. Ms. Smith then took her two small children to a back room and when she returned, she saw her family members beating and kicking Mr. Smith. Ms. Smith then called 911 and her family members left the apartment.

Tracy Rivers testified that on November 20, 1996, she looked out of her apartment and saw Appellant, Mr. Fleming, Mr. Pate, and Mr. Clark in the Smiths' apartment. Rivers could hear Appellant and Mr. Smith cursing at each other and shortly thereafter, she saw Mr. Fleming point a gun at Mr. Smith and order him on the floor. Mr. Fleming then stabbed Mr. Smith with a knife.

-3-

Officer Melanie Lewis of the Memphis Police Department testified that on November 20, 1996, she went to Appellant's residence and talked to Appellant about the stabbing. During the discussion, Appellant stated that she had stabbed Mr. Smith and thrown the knife under a red Ford Escort that was parked next to the apartment complex. Officer Larry Colburn of the Memphis Police Department testified that on November 20, 1996, he discovered a knife under a red Ford Escort that was parked next to the apartment complex.

Appellant testified that on November 20, 1996, she telephoned her grandchildren who were staying at the Smiths' apartment. During the conversation, she heard Mr. Smith cursing the grandchildren and then Smith took the phone and began cursing Appellant. Appellant then became concerned about the safety of her grandchildren.

Appellant testified that after the telephone conversation, she went to the Smiths' apartment to get her grandchildren. After she arrived at the apartment and knocked on the door, Mr. Smith opened the door and then grabbed Appellant and began hitting and kicking her. Mr. Smith then stated, "I'm go[ing] to beat your ass just like I do your daughter and your kids too." After Mr. Smith got on top of Appellant and started beating her, she stabbed him with a knife that she had put in her pocket after peeling some pears earlier that day. At this point, Mr. Fleming and Mr. Pate entered the apartment and Mr. Fleming pulled Mr. Smith off of Appellant.

Appellant testified that the only reason why she went to the apartment was to retrieve her grandchildren. Appellant testified that she did not go to the apartment in order to stab Mr. Smith and she only stabbed him because she was afraid he

would kill her while he was beating her.  Appellant also testified that she never saw Mr. Fleming with either a gun or a knife.

Terrence Clark testified that he went with Appellant to the Smiths' apartment on November 20, 1996.  When Appellant knocked on the door, Mr. Smith opened the door, pulled Appellant into the apartment, and began beating her.  Mr. Fleming then entered the apartment and pulled Mr. Smith off of Appellant.  Mr. Clark denied that he, Appellant, Mr. Fleming, and Mr. Pate had kicked Mr. Smith.  Mr. Clark also testified that he did not see Appellant stab Mr. Smith.

Lemoyne Pate testified that he drove Appellant to the Smiths' apartment on November 20, 1996.  Pate testified that he waited in his vehicle while Appellant went into the apartment.  When Appellant did not return, Pate entered the apartment and saw Mr. Smith on top of Appellant.  Pate then knocked Mr. Smith off of Appellant and Pate and Appellant left the apartment.

James Fleming testified that on November 20, 1996, his younger brother Tracy called him and stated that Appellant was upset and was going to the Smiths' apartment.  Mr. Fleming then went to the Smiths' apartment and he saw Appellant and Mr. Clark standing in front of the door.  Shortly thereafter, Mr. Fleming saw Appellant being pulled into the apartment.  When Mr. Fleming entered the apartment, he saw Mr. Smith on top of Appellant.  Mr. Fleming then pulled Mr. Smith off of Appellant and the two men began fighting.  After a brief altercation, Mr. Fleming, Appellant, Mr. Pate, and Mr. Clark left the apartment.  Mr. Fleming did not see Appellant stab Mr. Smith.  Mr. Fleming denied that he had a gun or a knife while he was in the apartment.

**ANALYSIS**

Appellant contends that the trial court erred when it ruled that she could not testify about an alleged prior incident in which Mr. Smith cut Mr. Clark with a knife and she could not question other witnesses about the alleged incident. Appellant argues that evidence of the prior alleged incident was admissible because it supported her claim that Mr. Smith was the first aggressor and her claim that she stabbed Mr. Smith because she was afraid that he would kill her.

This Court has noted that there is a distinction between the use of evidence of prior acts of violence by the victim against third parties to corroborate the defense theory that the victim was the first aggressor and the use of such evidence to establish the defendant's fear of the victim at the time of the offense. See State v. Ruane, 912 S.W.2d 766, 779 (Tenn. Crim. App. 1995). "If the defendant was aware of the victim's violent conduct against other individuals at the time of the offense, such proof is admissible as substantive evidence of the defendant's state of mind." State v. John D. Joslin, No. 03C01-9510-CR-00299, 1997 WL 583071, at *36 (Tenn. Crim. App., Knoxville, Sept. 22, 1997), perm. to appeal denied, (Tenn. 1998). "Because such evidence is offered to establish the defendant's state of mind with respect to the victim, the defendant's knowledge of the specific violent acts of the victim is required." Id., 1997 WL 583071, at *36. "Thus, the defendant may testify about the victim's threatening or violent conduct toward other individuals as long as the defendant was aware of that conduct at the time of the offense." Id., 1997 WL 583071, at *36.

On the other hand, if the defendant was not aware of the victim's violent conduct toward others, the evidence is not admissible as substantive evidence of the defendant's state of mind, but is admissible for the limited purpose of corroborating a self-defense claim that the victim was the first aggressor. Id., 1997 WL 583071, at *36.

> Thus, individuals other than the defendant may testify on direct or cross-examination about threatening or violent conduct of the victim, even though the defendant had no knowledge of the conduct at the time of the offense, as long as the testimony is offered only to corroborate the defendant's self-defense claim that the victim was the first aggressor.

Id., 1997 WL 583071, at *36.

## A. Evidence of the Victim's Prior Acts of Violence

The record indicates that before trial, the State filed a motion in limine in which it asked the trial court to prohibit Appellant and her co-defendant from making reference to or questioning any witnesses about prior acts of violence committed by Mr. Smith against third parties. After a hearing on the motion, the trial court ruled that it would grant the motion as to opening statements and the defense could not mention the specifics of any acts of violence during its opening statement.

After Mr. Smith's direct examination, the defense asked the trial court whether it would allow cross-examination of Mr. Smith about an alleged prior incident in which he cut Mr. Clark with a knife. During a jury-out hearing, defense counsel asked Mr. Smith whether the police had ordered him to leave the apartment after he cut Mr. Clark while Mr. Clark was living in the apartment during October of 1996. Mr. Smith initially admitted that he had been in a confrontation with Mr. Clark and that the police had been called as a result, but he denied that he cut Mr. Clark with a knife

during the confrontation. After additional questioning, Mr. Smith admitted that he had "grabbed [Mr. Clark] and shook him up." Mr. Smith also stated that he could not recall whether he had used a knife during the confrontation.

After listening to the testimony of Mr. Smith during the jury-out hearing, the trial court ruled that the defense could not cross-examine Mr. Smith about the prior incident because it was not relevant to any issue in the case. Defense counsel then asked for permission to voir dire Appellant about the prior incident in order to demonstrate the relevance of the evidence. The trial court granted the request, and defense counsel called Appellant to testify during the jury-out hearing. Appellant testified that Mr. Clark had come to live with her after he had been in a confrontation with Mr. Smith. Appellant testified that Mr. Clark had told her that about a month before the incident in this case, Mr. Smith had cut him during a fight that ended when Ms. Smith intervened. After hearing Appellant's testimony, the trial court ruled that evidence of the prior incident was not admissible because the proof that had been introduced up to that point did not implicate a self-defense claim. The trial court did grant the defense's request to keep Mr. Smith under subpoena in order to allow eventual cross-examination about the prior incident if further proof indicated that evidence of the prior incident was relevant.

When the State called Ms. Smith as its next witness, defense counsel asked for a bench conference. During the bench conference, defense counsel asked the trial court whether they could have a jury-out hearing to question Ms. Smith about the prior confrontation between Mr. Smith and Mr. Clark. The trial court ruled that it would not allow the defense to question Ms. Smith about the incident, but it would agree to keep Ms. Smith under subpoena so that the defense could question her

about the prior incident if further proof indicated that the evidence was relevant to an issue in the case.

At the close of the State's proof, the defense asked for a jury-out hearing in order to voir dire Mr. Clark about his prior confrontation with Mr. Smith. The trial court granted the request and allowed the defense to question Mr. Clark about the incident. Mr. Clark testified that about a month before November 20, 1996, he and Mr. Smith were involved in a confrontation during which Mr. Smith grabbed him and held a knife to his neck. Mr. Clark testified when he turned over, Mr. Smith "nicked" him in the back with the knife. Mr. Clark also testified that he told Appellant about this incident when he went to live with her about a month before the incident in this case. The trial court then ruled that evidence about the prior incident was still inadmissible because it was not relevant to Appellant's claim of self-defense.

After Appellant, Mr. Clark, and Mr. Pate testified on Appellant's behalf, defense counsel made one more attempt to convince the trial court to admit evidence about the prior incident between Mr. Smith and Mr. Clark. Defense counsel argued that the evidence was relevant to Appellant's state of mind at the time of the offense and to Appellant's claim that Mr. Smith was the first aggressor. The trial court ruled that it would instruct the jury about self-defense, but it would not change its ruling that evidence about the prior incident between Mr. Smith and Mr. Clark was not admissible.

**B.  Appellant's Testimony**

Appellant contends that the trial court erred when it prohibited her from testifying about the prior incident in which Mr. Smith cut Mr. Clark with a knife. Specifically, Appellant contends that the trial court should have permitted this testimony because it was substantive evidence of her state of mind at the time she stabbed Mr. Smith.

We conclude that the trial court erred when it prohibited Appellant from testifying about the prior incident in which the victim displayed violent conduct. There is no dispute that Appellant had knowledge of the incident in which Mr. Smith cut Mr. Clark with a knife. Indeed, both Appellant and Mr. Clark testified during jury-out hearings that Mr. Clark told Appellant about this incident one month before Appellant stabbed Mr. Smith with the knife. In addition, Appellant testified that she stabbed Mr. Smith because she was afraid that he would kill her while he was beating her. Appellant's testimony about Mr. Smith's violent conduct toward Mr. Clark was clearly relevant to establishing the reason for Appellant's belief that Mr. Smith would kill her. Because Appellant had knowledge of the prior incident, Appellant's testimony about the incident was admissible as substantive evidence of her state of mind at the time of the offense. John D. Joslin, 1997 WL 583071, at *36; Ruane, 912 S.W.2d at 779; State v. Hill, 885 S.W.2d 357, 361 n.1 (Tenn. Crim. App. 1994). Thus, the trial court erred when it excluded this evidence.

The State contends that even if the trial court erred, the error was harmless because evidence about the prior incident of violence on the part of Mr. Smith had already been introduced or alluded to at one point or another. This argument is inaccurate. A review of the record indicates that the jury was never informed that Mr. Smith held a knife to Mr. Clark's throat and cut him on the shoulder approximately

one month before the incident at issue in this case. In short, the trial court's error prevented Appellant from establishing a reason for her belief that Mr. Smith would kill her. Therefore, we conclude that the trial court's error requires a remand for a new trial.

## C. Testimony of Other Witnesses

Appellant contends that the trial court erred when it prohibited her from asking other witnesses about the prior incident in which Mr. Smith cut Mr. Clark with a knife. Specifically, Appellant contends that the trial court should have permitted the other witnesses to testify about the prior incident during direct or cross-examination because the testimony was offered to corroborate her claim that Mr. Smith was the first aggressor.

Initially, we note that in the previous cases in which this Court has addressed the issue of whether a defendant could introduce evidence about the victim's prior acts of violence in order to corroborate the defendant's theory that the victim was the first aggressor, the defendant was unaware of the victim's violent acts at the time of the offense. See, e.g., John D. Joslin, 1997 WL 583071, at *37; Ruane, 912 S.W.2d at 781; Hill, 885 S.W.2d at 361. However, we so no reason why a defendant should be prohibited from questioning other witnesses about the victim's prior violent acts in order to corroborate the defendant's claim that the victim was the first aggressor simply because the defendant was aware of the violent acts at the time of the offense.

We conclude that the trial court acted properly when it prohibited Appellant from cross-examining Mr. Smith and Ms. Smith about the prior incident during the State's case-in-chief. The general rule is that before witnesses other than the defendant can testify about violent conduct of the victim in order to corroborate the defendant's theory that the victim was the first aggressor, the issue of first aggressor must have been raised by the evidence. Ruane, 912 S.W.2d at 780. At the time that Mr. Smith and Ms. Smith testified, no proof had been introduced that raised the first aggressor issue. Thus, the trial court was correct when it initially refused to allow cross-examination about Mr. Smith's prior incident of violence.

On the other hand, we conclude that after Appellant testified that Mr. Smith was the one who initiated the fight by immediately attacking her when he opened the door, the trial court should have allowed Appellant to question Mr. Clark about the incident on direct examination and to question Mr. Smith and Ms. Smith about the incident on cross-examination for the limited purpose of corroborating her claim that Mr. Smith was the first aggressor. See John D. Joslin, 1997 WL 583071, at *36 (holding that individuals other than the victim may testify on either direct or cross-examination about violent conduct of the victim in order to corroborate the defendant's theory that the victim was the first aggressor). Because the proof at that point raised the first aggressor issue, Appellant was entitled to question the other witnesses about Mr. Smith's prior violent act.

The State contends that even if the trial court erred, the error was harmless because the proof that Appellant was the first aggressor was overwhelming. We disagree. In this case, the issue of who was the first aggressor was hotly contested. Mr. Smith and Ms. Smith both testified that on November 20, 1996, Appellant, her

-12-

two sons, and her grandson came bursting into the apartment and began attacking Mr. Smith almost immediately. In contrast, Appellant and Mr. Clark both testified that when Mr. Smith opened the door to the apartment, he immediately grabbed Appellant and began beating her. In addition, Appellant, Mr. Clark, Mr. Pate, and Mr. Fleming all testified that Mr. Pate and Mr. Fleming were not even in the apartment when the initial confrontation began and they all essentially denied that anyone other than Appellant had a weapon. In short, the trial court's error prevented Appellant from corroborating her claim that Mr. Smith was the first aggressor. Therefore, we conclude that the trial court's error requires a remand for a new trial.

## CONCLUSION

For the reasons stated above, we REVERSE the judgment of the trial court and we REMAND this matter for a new trial.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
JOE G. RILEY, Judge