IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 21, 2004 Session

## STATE OF TENNESSEE v. CHRISTOPHER FRANKLIN WADDELL

**Appeal from the Criminal Court for Sumner County**
**No. 291-2003     Jane Wheatcraft, Judge**

_____

**No. M2004-00126-CCA-R3-CD - Filed January 27, 2005**

_____

The Appellant, Christopher Franklin Waddell, appeals the sentencing decision of the Sumner County Criminal Court which resulted in the imposition of an effective thirty-year sentence. Under the terms of a plea agreement, Waddell pled guilty to two counts of aggravated assault, four counts of attempted aggravated robbery, and three counts of coercion of a witness. On appeal, Waddell argues that the trial court erred: (1) in its application of enhancing factors with respect to his aggravated assault convictions; (2) in imposing consecutive sentences; and (3) in denying an alternative sentence. After review, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined and THOMAS T. WOODALL, J., concurred in result only.

M. Allen Ehmling, Gallatin, Tennessee, Attorney for the Appellant, Christopher Franklin Waddell.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth T. Ryan, Senior Counsel; and Thomas Dean, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Procedural History

The effective thirty-year sentence at issue in this case arose from three separate indictments. On August 7, 2001, the Appellant was involved in an altercation with Jeffrey Sparks in a Portland, Tennessee parking lot. During the incident, the Appellant confronted Sparks and then struck him in the head with a wooden stick. The injuries to the victim required medical attention. On November 8, 2001, a Sumner County grand jury returned an indictment in case number 903-2001 against the Appellant charging him with aggravated assault by use of a deadly weapon.

Case number 12-2002 stems from the Appellant's involvement in several aggravated robberies at the Lake D'Ville Apartments in Hendersonville, Tennessee. On September 5, 2001, the Appellant, along with three co-defendants, each armed and wearing ski masks, entered an apartment where a party was in progress. The armed intruders forced those present to lie on the floor while they stole jewelry, marijuana, and money. As the defendants fled the scene, they were chased by a neighbor on foot. Upon reaching the getaway car, the Appellant turned and fired a shot from his weapon. Following an investigation, the police arrested the Appellant, Mark Sampson, Chad Holmes, and David Lame. A Sumner County grand jury returned an eighteen-count indictment against the Appellant and the co-defendants on January 10, 2002, which included charges of aggravated robbery, kidnapping, aggravated assault,[1] and unlawful discharge of a weapon. When interviewed, co-defendant David Lame confessed to the crime and implicated the Appellant, Sampson, and Holmes. Sampson and Holmes eventually also confessed their involvement. Each received reduced sentences for their cooperation.

Case number 291-2003 arose from three separate criminal acts which occurred while the Appellant was incarcerated on the charges arising from his indictment in case number 12-2002. Two of the charges stem from letters written on June 4, 2002, and February 28, 2003, attempting to influence the testimony of potential witnesses in case number 12-2002. The first was a threatening letter written to co-defendant David Lame after he agreed to testify against the Appellant. The second involved a letter written to Jason Cross soliciting his help in a planned assault of co-defendant Mark Sampson. The last instance arose from an assault and verbal threats by the Appellant against Sampson in the laundry room of the jail on March 28, 2003. On April 10, 2003, a Sumner County grand jury returned an indictment against the Appellant charging him with three counts of coercion of a witness.

On September 11, 2003, the Appellant, under the terms of the plea agreement, pled guilty to aggravated assault in case number 903-2001, four counts of attempted aggravated robbery and one count of aggravated assault in case number 12-2002, and three counts of coercion of a witness in case number 291-2003. The plea agreement provided that the Appellant would receive a six-year sentence for each of the four counts of attempted aggravated robbery, with all four counts to be served concurrently. With respect to the remaining charges, the agreement provided that these sentences and the manner of service of the sentences would be determined by the trial court. Additionally, the trial court would determine whether the "open plea" sentences would be served concurrently or consecutively.

A sentencing hearing was held December 3 and December 16, 2003. The court heard testimony from various witnesses. The twenty-five-year-old Appellant acknowledged that he had owned several weapons and had used and sold drugs for approximately five years. Testimony was also presented regarding the Appellant's criminal past, including testimony that the Appellant was

---

[1]This charge stemmed from the Appellant's firing of his weapon while in flight from the indicted robberies, causing the victim, Matt Burns, to "fear imminent bodily injury by use of a deadly weapon."

involved in drive-by shootings in Florida. One witness, Carey Gallagher, testified that she was the victim of an aggravated assault by the Appellant. Ms. Gallagher related that she and the Appellant attended the same party in Portland, but the Appellant was asked to leave. Shortly thereafter, a drive-by shooting occurred. At the hearing, the Appellant admitted that he had fired the shots. Gallagher further testified that she saw the Appellant in the front yard after the shooting, and, following an altercation with the Appellant, he slammed her head into the windshield of a car, requiring medical attention.

In addition, the State introduced letters written by the Appellant while he was in jail. The letters contained numerous threats, as well as several references to guns, violence, and smuggling illegal drugs into the jail. Photographs were also admitted of graffiti authored by the Appellant on the wall of his cell. The text of these messages, which the Appellant admitted writing, involved threats directed at the co-defendants in the robbery case. A tape of a phone conversation by the Appellant shortly before the sentencing hearing was admitted, during which he threatened a police detective. The Appellant also admitted that he wrote a letter to the jail administrator weeks before the sentencing hearing in which he stated that "[he] can't be broken."

At the conclusion of the hearing, the trial court imposed maximum six-year sentences for each of the two aggravated assault convictions. The court also imposed the maximum sentence of four years for each of the four counts of coercion of a witness and sentenced the Appellant, as agreed, to concurrent six-year sentences for the attempted aggravated robbery convictions. The court then determined that all the sentences, with the exception of the attempted aggravated robbery sentences, were to be served consecutively, resulting in an effective sentence of thirty-years. Finally, the trial court determined that the Appellant was not an appropriate candidate for any type of alternative sentencing and that the sentences should be served in confinement.

**Analysis**

On appeal, the Appellant raises three issues for our review: (1) whether the trial court erred in its application of enhancement factors with respect to his two sentences for aggravated assault; (2) whether the trial court erred in imposing consecutive sentences; and (3) whether the trial court erred in denying an alternative sentence. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. On appeal, the

Appellant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)).

### 1. Application of Enhancement Factors

On appeal, the Appellant challenges the application of certain enhancement factors applied to his convictions for aggravated assault. The Appellant does not contest his three four-year sentences for coercion of a witness. Moreover, as previously noted, the Appellant's sentences for attempted aggravated robbery were imposed under the terms of the plea agreement.

Aggravated assault is a class C felony which carries a sentencing range of three to six years. Tenn. Code Ann. § 40-35-112(a)(3) (2003). The presumptive sentence to be imposed by the trial court for a class C felony is the minimum sentence within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). When there are enhancement factors and no mitigating factors, the court may sentence above the minimum in the range. Tenn. Code Ann. § 40-35-210(d). Moreover, the weight to be assigned to the appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996).

### a. Aggravated Assault- Case Number 903-2001

Imposing a sentence of six years, the trial court applied four enhancement factors: (2) that the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (9) that the Appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (11) that the Appellant had no hesitation about committing a crime when the risk to human life was high; and (14) that the felony was committed while on any of the following forms of release status if such release is from a prior felony conviction. *See* Tenn. Code Ann. § 40-35-114 (2), (9), (11), (14) (2003).[2] The Appellant challenges the application of factors (11) & (14). He does not challenge the application of factors (2) or (9), and we agree that they are amply established by the record and the Appellant's admissions at the sentencing hearing.

With regard to factor (11), the trial court applied this factor "because this aggravated assault involved a weapon that could have done even more serious damage to Mr. Sparks than it did." Relying upon *State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995), the Appellant asserts

---

[2] Pursuant to a 2002 amendment to Tennessee Code Annotated section 40-35-114, the existing enhancement factors were renumbered as factors two (2) through twenty-three (23). While both the trial court and the Appellant's brief utilize the pre-amendment numeration, the State correctly utilizes the current scheme.

that this factor was erroneously applied because it is applicable only "if the facts demonstrate that the defendant created a high risk to the life of a person *other than the named victim*." He argues that the only risk to human life, as found by the trial court, was to the named victim, and, thus, the factor is not applicable.

The State relies upon *State v. Jones*, 883 S.W.2d 597 (Tenn. 1994), for the proposition that factor (11) is not an element of aggravated assault and was properly applied. However, *Jones* holds that factor (11) is not an element of aggravated assault, when the assault is predicated upon the infliction of serious bodily injury because the State may prove serious bodily injury without proving a high risk to life. *Id*. at 602. In the present case, the indictment charges the Appellant with aggravated assault by use of a deadly weapon. This court has previously held that factor (11) is "essentially" an element of that offense. *State v. Nixon*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995) (observing that "there is necessarily a high risk to human life and the great potential for bodily injury whenever a deadly weapon is used"); s*ee also State v. Hill*, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) (the offense of aggravated assault inherently comprises high risk to human life). Although this court has found that factor (11) may still be applied if persons other than the victim are placed in danger by the actions of the defendant, those are not the facts in this case. *See State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997). Thus, this factor was improperly applied.

The State concedes that factor (14) was incorrectly applied. We agree. In order to apply factor (14), the felony at issue must have been "committed while on any of the following forms of release status if such release is from a prior felony conviction: (A) Bail, if the defendant is ultimately convicted of such prior felony; . . . [or] (C) Probation; . . ." Tenn. Code Ann. § 40-35-114(14). The trial court applied this factor, stating that the "aggravated assault was committed while he was on bond . . . for the assault, and he was also on probation for contributing to the delinquency of a minor, criminal impersonation, and resisting arrest."

Review of the record reveals that the Appellant was not on bond for any felony charges when he committed the instant offense. The assault charge referred to by the court was a misdemeanor assault. Moreover, all the convictions for which the Appellant received probation were misdemeanor offenses. Thus, the record establishes that the Appellant was not on bond or probation for a prior felony offense when he committed this aggravated assault.

Regardless of the error in applying these two factors, we find that the six-year sentence imposed for this aggravated assault conviction is justified. Based upon the record before us, factors (2) and (9) are entitled to great weight. The Appellant has prior convictions for resisting arrest, criminal impersonation, contributing to the delinquency of a minor, assault, sale of marijuana, driving on a suspended license, and theft under $500. The pre-sentence report indicates, and the Appellant concedes, that a number of these offenses were committed while the Appellant was on probation. We conclude that application of the two enhancement factors supports the sentence.

### b. Aggravated Assault- Case number 12-2002

Based upon the Appellant's act of "recklessly caus[ing] Matt Burns to reasonably fear imminent bodily injury by use of a [firearm]," the trial court found six enhancing factors and imposed a sentence of six years. In addition to factors (2), previous criminal history, and (9), previous unwillingness to comply with conditions of release, the trial court applied factors (4) that the offense involved more than one victim; (10) that the defendant possessed or employed a firearm during the commission of the offense; (11) that the defendant had no hesitation about committing a crime when the risk to human life was high; and (17) that the crime was committed under circumstances under which the potential for bodily injury to the victim was great. Tenn. Code Ann. § 40-35-114 (2), (4), (9), (10), (11), (17). The Appellant challenges the application of factors (4), (10), (11), and (17). The State concedes that these four factors were erroneously applied to the sentence. We agree.

Clearly factor (10), possession of a firearm, was misapplied as use of a firearm is an element of the offense as alleged in the indictment count. The Appellant relies upon *State v. Anthony Humphrey*, No. W2002-00195-CCA-R3-CD (Tenn. Crim. App. at Jackson, May 16, 2003), to argue that factors (4) and (11) are inapplicable.

In *Humphrey*, this court rejected application of these factors to a defendant who fired at a group of people in an apartment complex who were fleeing from the defendant's attempted robbery of them, a case factually similar to the instant case.

On appeal, a panel of this court rejected application of factors (4) and (11) reasoning that:

> . . . [T]he victims were part of a group of six Mexicans when the crimes were committed. However, it is not clear from the record the extent to which others were jeopardized by the shots fired by the defendant, at least some of which were in the air[.] . . . Accordingly, we conclude that the record does not support applying this factor to any of the convictions. We believe that this same rationale applies to the application of enhancement factor [4], that the offense involved more than one victim.

Accordingly, we find that factors (4) and (11) were inappropriately applied. Additionally, the Appellant is correct that factor (17) was erroneously applied. *See State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) (holding that there is nothing in the statutory language of factor (17) to indicate that it applies to potential victims or that it applies simply because the offense was committed in the presence of other individuals and that it is therefore not applicable when the offense involved bodily injury to a specific, named victim).

Thus, just as in the previous aggravated assault, the trial court should have applied only two enhancement factors, (2) and (9). Again, we note that these factors are given great weight due to the Appellant's pattern of criminal convictions and an established history of committing crimes while

on probation. Accordingly, despite the misapplication of four enhancement factors, we find that the six-year sentence is justified by the sentencing record.

### c. *Blakely v. Washington*

Although not raised as an issue, we are constrained to note at this juncture the recent United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), clarifying and extending its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). The *Blakely* court held that any fact that increases a sentence beyond the "relevant statutory maximum," defined as the maximum sentence that a judge may impose without making any additional findings of fact, must be submitted and proved to the jury beyond a reasonable doubt or admitted by the defendant. *Blakely*, 542 U.S. at ____, 124 S. Ct. at 2536-37. Thus, adherence to *Blakely* requires that any enhancement factors, other than prior criminal history which was expressly excluded, can only be applied if found by a jury or admitted by the defendant. *Id*.

A review of the two sentences for aggravated assault under the constraints of *Blakely* leads us to the conclusion that neither factor (2) nor factor (9) is implicated. Application of factor (2), previous criminal history, is expressly permitted under *Blakely*. Additionally, in this case, the Appellant admitted at the sentencing hearing that while on probation he had committed additional crimes. The specific crimes committed were referenced at the hearing. The pre-sentence report confirms that the Appellant, during three separate probationary periods, committed additional offenses. The pre-sentence report was entered without objection. Thus, we conclude that the Appellant's unequivocal testimony at the sentencing hearing on this issue, in addition to the unobjected-to evidence contained in the pre-sentence report, constitutes an admission that enhancing factor (9) is established. Accordingly, *Blakely* review is not triggered.

Thus, having determined that *Blakely* is not implicated in this case, upon *de novo* review, we conclude that the record amply supports both enhancing factors. Moreover, based upon the finding of these two enhancement factors, and no mitigating factors, we conclude the trial court's imposition of the maximum sentence of six years for each aggravated assault conviction is justified. *See* Tenn. Code Ann. § 40-35-210(d).

## II. Consecutive Sentencing

Next, the Appellant challenges the imposition of consecutive sentences. The court ordered that each of the Appellant's two six-year sentences for aggravated assault and three four-year sentences for coercion of a witness be served consecutively to each other and consecutively to the six-year sentences for attempted aggravated robbery, resulting in an effective sentence of thirty years.

Appellate review of the imposition of consecutive sentences is *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness imposes upon the appealing party the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Consecutive sentences are warranted if the trial court finds, by a preponderance of the evidence, that any one of the seven enumerated criteria of Tennessee Code Annotated section 40-35-115(b) (2003) exist.

The trial court imposed consecutive sentences based upon its finding that the Appellant was a "dangerous offender" and "because of his extensive criminal history." Tenn. Code Ann. § 40-35-115(b)(2) and (4). An accused qualifies as a "dangerous offender" when his "behavior indicates little or no regard for human life and [he has] no hesitation about committing a crime in which the risk to human life is high." *Id*. at (b)(4). This language is essentially a codification of our supreme court's holding in *Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976). *See State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). The court in *Gray* more specifically held that "[a] defendant may be classified as a dangerous offender <u>if the crimes for which he is convicted</u> indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." 538 S.W.2d at 393 (emphasis added). In *Wilkerson,* 905 S.W.2d at 933, our supreme court reaffirmed these principles and imposed additional guidelines for finding a defendant to be a "dangerous offender." The court opined that proof that a defendant was a "dangerous offender," standing alone, was not enough to sustain the imposition of consecutive sentences. *Id*. at 938. Consequently, under *Wilkerson*, before the sentencing court may discretionarily impose consecutive sentences for one classified as a "dangerous offender," the court must also find that the resulting sentence is reasonably related to the severity of the crimes and necessary to protect the public against further criminal conduct. *Id.*

The record supports a finding of these requirements. First, the Appellant's act of arming himself with a weapon and invading a residence, with numerous people present, with the intent to commit robbery, indicates no hesitation "about committing a crime in which the risk to human life is high." The Appellant, even after incarceration, continued to coerce and threaten those in authority and those who might dare testify against him. He has committed brutal assaults upon individuals without reason. He is enamored with weapons and admits owning and possessing several weapons, including an assault weapon. By his own admission, he has been involved in drive-by shootings and drug activity. Irrespective of the numerous probated sentences received, the Appellant's criminal conduct continued unabated and, in fact, escalated in nature and frequency. The Appellant himself professes that he cannot be "broken." From these facts, it is obvious that an extended sentence is necessary to protect the public from further criminal acts by the Appellant and that the sentences are reasonably related to the severity of the crimes. Accordingly, we conclude that the trial court did not err in imposing an aggregate sentence of thirty years.

## III. Alternative Sentencing

Last, the Appellant argues that the trial court erred by ordering a sentence of total confinement. A defendant convicted of a class C, D, or E felony and sentenced as a mitigated or standard offender is presumed to be a favorable candidate "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Guidance regarding what

constitutes "evidence to the contrary" to rebut the presumption can be found in Tennessee Code Annotated section 40-35-103(1), which sets forth the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

Although the presumption of alternative sentencing was available to the Appellant, and considered by the trial court, the court denied any form of alternative sentencing finding: (1) a lengthy history of criminal conduct; (2) confinement was necessary to avoid depreciating the seriousness of the offenses; and (3) that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Appellant. The trial court further observed:

The fact of the matter is that in the 18 years that I have been on the bench I have not come across a defendant that I find puts society at more risk than Mr. Waddell. . . . [H]aving seen these letters, having looked at the pictures and the drawings, having heard the tape where it is obvious that he is threatening Officer Hardin, I believe that incarceration is necessary in this case . . . He has a long history, by his own admission of criminal conduct. . . .

He has been on probation, and he has continued to commit crimes. He left the State of Florida, apparently, because he was in so much hot water with the legal system down there. The fact of the matter is, this man, his life has been drugs and guns and shooting of those guns, drive-by shootings, drug dealing.

One particular section of one of the letters that I looked at started, "You know what an AK can do. It stays down low, like me. . . . I also got me a new friend. His name is MAC-10. You need to meet him. He has a few 36 friends. When I release their power, it will be a f—ing war. Do you want to be in the war?

The record supports the trial court's findings that sentences of total confinement are warranted.

## CONCLUSION

Based upon the foregoing, we affirm the sentencing decisions of the Sumner County Criminal Court and the trial court's imposition of an effective thirty-year sentence.

_____
DAVID G. HAYES, JUDGE